## MITCHELL *v.* OVERMAN.

Where the complainant dies after the term at which the cause on its submission for final hearing upon the pleadings and proofs was continued by an older of *curia advisare vult,* the decree in his favor entered as of that term cannot be impeached by the defendants upon the ground that it was rendered subsequently to his death.

ERROR to the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. Rufus King* and *Mr. Lawrence Maxwell, Jr.,* for the plaintiff in error.

*Mr. Stanley Matthews* and *Mr. William M. Ramsey* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

Conrad Stutzman brought suit, July 26, 1866, against Robert Mitchell and others, in the District Court for the county of Webster, a court of general jurisdiction, in the State of Iowa. Two of the defendants, although duly served with process, failed to appear, and a decree *pro confesso* against them was rendered by the court, at its October Term, 1868. As to all the other parties, the plaintiff and the defendants being present in person, or by counsel, "the cause" (as appears by

the recitals in the record) "was submitted upon the pleadings and proofs on file ; and, after argument of counsel, the cause was then finally submitted, and taken under advisement by the court, the decree herein to be rendered as of the term of said trial and submission." At the October Term, 1870, Mitchell " asked leave to amend his answer, which was granted, at the May Term, 1871, upon terms." At the October Term, 1872, that " amendment was stricken from the files for non-compliance with such terms ; " and thereupon the court, at the last-named term, to wit, on Nov. 10, 1872, rendered a decree in favor of Stutzman against Mitchell for the sum of $3,395.58, with interest thereon at the rate of six per cent per annum, from Oct. 16, 1868, and for the costs. It was further ordered that the decree be " entered now [then], as of the sixteenth day of October, 1868, the last day of the October Term of this court, 1868, and shall take effect as of that date."

It appears that on the 10th of November, 1869, while the case was held under advisement, Stutzman died intestate. No suggestion of his death was entered of record, nor was the suit revived in the name of his personal representative, to whom, under the laws of Iowa, the right of action survived. Indeed, letters of administration upon his estate were not issued until Nov. 26, 1872.

At the time the decree was rendered, Mitchell and his attorney were ignorant of Stutzman's death, but the fact was known to Stutzman's attorney of record, who drafted and procured the entry of the decree. It is, however, found by the court below, to which this cause was submitted upon a written stipulation, waiving a jury, that there was no fraud in obtaining the decree.

Upon the decree, Overman, administrator of Stutzman, on the 15th of September, 1873, commenced this action against Mitchell. A recovery is resisted on the ground that the decree is absolutely void, inasmuch as it was in fact rendered after the death of Stutzman. Judgment was rendered against Mitchell for the full amount of the decree. He sued out this writ, and assigns for error that the facts found do not authorize the judgment.

The common law was in force in Iowa during the whole period from the commencement to the conclusion of the suit in the State court, except as modified by sects. 3469, 3470, 3472, 3473, 3477, and 3478 of the Iowa Code of 1860, and by the act of April 8, 1862. The latter act — of which, as well as of the State code, we must take judicial notice — substitutes for one of the sections of the code the following provision : " Actions, either *ex contractu* or *ex delicto*, do not abate by the death, marriage, or other disability of either party, nor by the transfer of any interest therein, if from the legal nature of the case the cause of action can survive or continue. In such cases the court may, on motion, allow the action to be continued by or against his legal representative or successor in interest ; but in case of the death of the defendant, a notice shall be served upon his representative, under the direction of the court." Laws of Iowa, 1862, p. 229. These statutory provisions prescribe the manner in which actions may be revived, and the time within which such revivor must take place. But it is clear that they do not provide for a case like the one before us. The question here is, whether the State court was wholly without jurisdiction to enter the decree against Mitchell as of, or make it take effect from, the last day of the term at which the cause, during the lifetime of Stutzman, was finally submitted for determination. We are not informed by any decision, to which our attention has been called, that the Supreme Court of Iowa has passed upon it. The cases cited from that court do not, in our opinion, meet it in the exact form in which it is here presented. It must, therefore, be determined by the rules of practice which obtain in courts of justice in virtue of the inherent power they possess.

The adjudged cases are very numerous in which have been considered the circumstances under which courts may properly enter a judgment or a decree as of a date anterior to that on which it was in fact rendered. It is unnecessary to present an analysis of them, some of which are cited in a note to this opinion. We content ourselves with saying that the rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a

decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up. In such cases, upon the maxim *actus curiæ neminem gravabit,* — which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice, — it is the duty of the court to see that the parties shall not suffer by the delay. A *nunc pro tunc* order should be granted or refused, as justice may require in view of the circumstances of the particular case. These principles control the present case. Stutzman was alive when it was argued and submitted. He was entitled at that time, or at the term of submission, to claim its final disposition. A decree was not then entered because the case, after argument, was taken under advisement. The delay was altogether the act of the court. Its duty was to order a decree *nunc pro tunc,* so as to avoid entering an erroneous decree.

We attach no consequence to the fact that, while the cause was under advisement, Mitchell asked leave to amend his answer, which was granted upon terms. As they were not complied with, his amendment was stricken from the files. The question must, therefore, be determined as if no amendment had been attempted.

It is scarcely necessary that we should extend this opinion by any comments upon the numerous cases cited in the printed argument of appellant's counsel. In many of them, although the death occurred after the submission of the cause or after verdict, the judgment was, in fact, entered as of a time subsequent to the death. They manifestly have no bearing on this case, where the decree was entered as of a time when the party was alive, and to take effect from the date when it would have been entered but for the act of the court, induced by causes beyond the control of the parties.

It seems to us to be entirely clear that the State court had the power, upon well-settled rules of practice, both in courts of

law and of equity, to enter the decree as of the term when, in the lifetime of Stutzman, the cause, after argument, was finally submitted for decision.

*Judgment affirmed.*

NOTE.— *Bank of United States* v. *Weisiger,* 2 Pet. 481 ; *Clay* v. *Smith,* 3 id. 411 ; *Griswold* v. *Hill,* 1 Paine, 484 ; *Gray* v. *Brignardello,* 1 Wall. 627 ; *Campbell* v. *Misier,* 4 Johns. (N. Y.) Ch. 342 ; *Vroom* v. *Ditmas,* 5 Paige (N. Y.), 528 ; *Wood* v. *Keyes,* 6 id. 418, 478 ; *Perry* v. *Wilson,* 7 Mass. 393 ; *Currier* v. *Lowell,* 16 Pick. (Mass.) 170 ; *Stickney* v. *Davis,* 17 id. 169 ; *Springfield* v. *Wooster,* 2 Cush. (Mass.) 62 ; *Hess* v. *Cole,* 3 Zabr. (N. J.) 116 ; *Cumber* v. *Wane,* 1 Stra. 426 ; *Astley* v. *Reynolds,* 2 id. 915 ; *Tooker* v. *Duke of Beaufort,* 1 Burr. 746 ; *Trelawney* v. *Bishop of Winchester,* 2 id. 219 ; *Davies* v. *Davies,* 9 Ves. Jr. 461 ; *Belsham* v. *Percival,* 8 Hare, 157 ; 2 Coop. 176 ; *Green* v. *Cobden,* 4 Scott, 486 ; *Lawrence* v. *Hodgson,* 1 Y. & J. 368 ; *Freeman* v. *Tranah,* 12 C. B. 406 ; *Collinson* v. *Lister,* 1 Jurist, N. s. 835 ; 20 Beav. 355 ; *Blaisdell* v. *Harris,* 52 N. H. 191 ; 2 Daniell, Ch. Pr. (5th Am. ed.) pp. 1017, 1018 ; Tidd's Pract. (4th ed. with American notes) 952 ; 1 Barb. Ch. Pr. (2d rev. ed.) 341 ; Freeman, Judgments, sect. 57, and other authorities cited by those authors.