ANTHONY NITTI, APPELLANT, v. PUBLIC SERVICE RAIL-
WAY COMPANY, RESPONDENT.

Argued May 19, 1927—Decided October 17, 1927.

For the appellant, *Richard Doherty.*

For the respondent, *William H. Speer* (*Henry H. Fryling,* on the brief).

The opinion of the court was delivered by

PARKER, J. The suit is for damages for personal injuries, but the question involved is one of *res judicata.* The trial

judge directed a verdict for defendant on the ground of a former judgment between the same parties, based on the same cause of action, and this judicial action is the gravamen of the appeal.

Whatever difficulty inheres in the case arises out of informal, not to say irregular, proceedings in the former action. In 1910, when the plaintiff was only six years old, he lost a leg because of being run over by one of defendant's cars in the public street. An action was begun in his name "by Vito Nitti, his next friend," in the same court in which the judgment now under review was rendered; such action was noticed for trial, and later, after negotiations of settlement between the attorneys, a "consent" verdict of $500 was rendered under the supervision of the court. The minutes show that plaintiff testified as a witness. The $500 was paid to plaintiff's then attorney of record, who executed the usual warrant for satisfaction of judgment, which was filed in due course. The plaintiff's father, Vito Nitti, refused to accept the money, and on application of the attorney of record, it was paid into court, where, apparently, it still remains.

Matters rested in this shape until the plaintiff came of age, and then the present action was begun. The defendant pleaded former judgment; plaintiff replied *nul tiel record;* and the case being ripe for trial on this issue, it developed that no rule appointing the father as next friend in the former suit was on file, and that no formal judgment had been written up, nor was there any rule for judgment. The court made an *ex parte* order in the first suit for an entry of judgment *nunc pro tunc,* which was challenged by a motion and rule to show cause, and after taking testimony and hearing argument the rule to show cause was discharged. This was the posture of affairs at the trial in the present action.

Most of the argument in the present case is predicated upon alleged errors and irregularities in the former one. But if the court had jurisdiction of the parties and subject-matter, and there was a judgment in the former case cognizable by the trial court, that court was not concerned in

the present case, nor are we concerned on this appeal, with errors and irregularities in the former suit. *Slothoff* v. *Dunham*, 19 *N. J. L.* 181; *Reeves* v. *Townsend*, 22 *Id.* 396; *Palmer* v. *Freeholders*, 77 *Id.* 143, and cases cited.

That there was jurisdiction is indubitable. The Circuit Court is a court of general civil jurisdiction at common law. *Pamph. L.* 1838, *p.* 61; *Const.*, *art.* 6, § 5, ¶ 2. It had jurisdiction of defendant by process and appearance, and of plaintiff as a suitor. The lack of a petition and order appointing next friend, absent from the file, is consonant with a failure of the attorney to file them, but if they never existed, it is mere error in practice, and does not go to jurisdiction. 2 *Arch. Pr.* (*6th ed.*) 941, 942.

We proceed then, to the question whether there was a judgment cognizable by the trial court; and in examining this, we disregard the arguments *pro* and *con* touching the so-called "judgment *nunc pro tunc*," for the reason that we find there was an adequate judgment irrespective of that feature.

It is to be noted that both actions were in the same court; and this brings into play section 173 of the Practice act of 1903 (*Comp. Stat.*, *p.* 4106), which provides that "in any action which has been finally determined, until the clerk shall enter the record of the judgment, the verdict or rule for judgment entered in the minutes shall be held and taken in the court in which the same is obtained to be the record of the judgment in such action and shall be received in evidence in said court as such judgment, as fully as if the record had been made up and signed." Consequently, when the Hudson Circuit Court found on its own minutes the entry of a trial and verdict based on the earlier record, it was not only authorized, but required, to give it the force and effect of a judgment. The recognition of such minutes, especially in the same court, is nothing unusual, even in the absence of statute. *State* v. *Warady*, 78 *N. J. L.* 687, and cases on page 690. The clerk is required by statute to write up the judgment in a limited time (*Comp. Stat.*, *p.* 2957, § 4); but this is merely directory. *Weinberger* v. *Erie Railroad*

*Co.,* 86 *Id.* 259; see *Den* v. *Downam,* 13 *Id.* 135. We have said in this court that the statute does not extend its operation outside the very court in which the judgment was rendered (*Stein* v. *Goodenough,* 69 *Id.* 635); and, hence, if we were now confronted with an appeal in the first case, the lack of a formal judgment would have some force; but our present inquiry is whether the Circuit erred in recognizing the record of the former case in that court as exhibiting a judgment, and proceeding accordingly. We conclude that there was no error in this regard.

It may be well to add a word touching the rendition of a verdict of $500 for the loss of a boy's leg. This court is wholly in the dark as to the circumstances of the accident. If a clear case of negligence is made out, and no contributory negligence appears, such a sum may well be deemed very inadequate, though on this appeal the court would be powerless to correct it. But when such a verdict is taken by consent of reputable counsel, and under the supervision of an able and conscientious judge, who necessarily recognizes his duty to protect infancy, the only fair inference, particularly at this distance of time, is that the circumstances attending the accident were so devoid of any indication of defendant's negligence that the attorney for plaintiff was judicious in assenting to a $500 verdict in lieu of risking the direction of a verdict against him, or a nonsuit. Such dispositions of infancy accident cases are common enough in practice.

The judgment will be affirmed.

WALKER, CHANCELLOR (concurring). I agree that the judgment under review in this case should be affirmed because the former judgment entered in the same court by the same plaintiff against the same defendant for the same cause of action was dispositive of this case. And that is the way the trial judge regarded it. This court regards any attack here upon the former judgment as collateral and not allowable; and I accede to that view. However, in conceding that the attack is collateral, we have to concede the existence of the judgment, and cannot shut our eyes to the fact that

counsel for the plaintiff-appellant contends that the judgment is absolutely void (for reasons that need not now be stated), and that the trial judge overruled that contention and held that the former judgment was a bar to the present action. Counsel's contention was *bona fide,* though mistaken, and he had a right to so argue it, which he did, quoting and relying upon the opinion of this court in *Davis White Markets, Inc.,* v. *Lefas,* 96 *N. J. Eq.* 605, which he claimed was dispositive of the matter in hand in favor of the plaintiff-appellant. While we are not obliged to apply the doctrine of the Davis White Markets case to the instant case, there is language in that opinion which, in my judgment, calls for and requires comment.

In *Vanfleet's Coll. At.,* § 14, in speaking of a void judgment, the author says: "The party whom it professes to bind can rest at case, ignoring it entirely. He can defeat an action on it and all rights and titles derived through it, whenever and wherever he meets them. Like a void deed it is simply waste paper." That is what the plaintiff in this suit sought to do in the trial court, and that is what that court decided against him, and that is what is appealed here. The prior suit was brought by and in the name of the boy while he was an infant, and in that suit (Anthony Nitti, who sues by Vito Nitti, his next friend, *v.* Public Service Railway Co., Hudson County Circuit Court), a verdict was rendered by the jury on December 22d, 1910, in favor of the plaintiff and against the defendant for $500. Judgment was not formally entered thereon until the judge of the Circuit Court shortly prior to December 3d, 1925, made an order for its entry *nunc pro tunc* (as of the time of rendition of the verdict), and on that date made an order on the defendant to show cause on December 19th, 1925, why the judgment entered in the first cause *nunc pro tunc* should not be vacated and set aside. The judge of the Circuit heard that issue and in a memorandum filed in the case discharged the order to show cause and allowed the judgment *nunc pro tunc* to stand. The trial concluded as follows:

"Mr. Doherty—The plaintiff moves for the direction of verdict in favor of the plaintiff on the ground that the record

produced here does not constitute any bar to the present action. On the ground that at the time of its institution there was no semblance of a judgment of record against the defendant, and that the action of the court since the institution of the present suit in connection with the judgment *nunc pro tunc,* was improper, beyond its jurisdiction and abusive of its judicial discretion.

"The Court—I deny the motion and will allow you an exception.

"Mr. Doherty—Exception.

"Mr. Boyd—I move for a direction of verdict in favor of the defendant on the ground that there is a judgment on record, which has been introduced in evidence, and which is a bar to this action; that it has been stipulated by Mr. Doherty that the same parties are involved in this suit as were involved in the suit in 1910, and that it arose out of the same cause of action, and therefore the judgment filed *nunc pro tunc* is a bar to this action.

"The Court—I will grant this motion and allow Mr. Doherty an exception.

"Gentlemen of the Jury—I direct that you find in favor of the defendant and against the plaintiff, in this present suit, of no cause of action.

"The jury thereupon retired and returned and say that in accordance with the direction of the court they find in favor of the defendant and against the plaintiff of no cause of action."

Judgment final was duly entered upon this verdict. It should be stated that the infant plaintiff never collected the judgment and that the same was paid into the Circuit Court, where it still remains subject to his order.

The plaintiff appeals to this court and specifies among other grounds that the court below erroneously and in abuse of discretion ordered the entry of judgment *nunc pro tunc,* and directed the jury to find a verdict in favor of the defendant.

In the course of his argument here counsel for the plaintiff-appellant urged that it is beyond the power of a court to

direct the entry *nunc pro tunc* of an order not previously made in fact, citing and relying upon the case of *Davis White Markets, Inc.,* v. *Lefas, supra,* wherein this court said: "The underlying question which the case presents, therefore, is whether it was within the power of the court (of Chancery) to make a *nunc pro tunc* order, the effect of which—if it was valid—was to destroy the then existing status of the present appellants. We think it was not. The office of an order *nunc pro tunc* is only to supply some omission in the record of an order which was really made, but omitted from the record. If an order is actually made by the court, but there is a failure to enter it, the court may correct the mistake so as to make a record show the order which the court actually made as of the time when it was, in fact, made; but no court has power to make an order *nunc pro tunc,* the purpose of which is to give effect to its mandate as of a time anterior to that when it was in reality made. *Wilson* v. *Vance,* 55 *Ind.* 394; *Hegeler* v. *Henckell,* 27 *Cal.* 491; *Priest* v. *Mc-Master,* 52 *Mo.* 60; 29 *Cyc.* 1516, ¶ *B,* and cases cited."

Now, if this court, in deciding the Davis White Markets case, had stopped, as well it might, with the following declaration: "The underlying question which the case presents, therefore, is whether it was within the power of the court [of Chancery] to make a *nunc pro tunc* order, the effect of which, if it was valid, was to destroy the then existing status of the present appellant. We think it was not," then there would be no reason to criticise the declaration; but, in my judgment, the court not only went further than necessary, but declared an erroneous principle of law when it later said: "The office of an order *nunc pro tunc* is only to supply some omission in the record of an order which was really made, but omitted from the record. If an order is actually made by the court, but there is a failure to enter it, the court may correct the mistake so as to make a record show the order which the court actually made as of the time when it was in fact made; but no court has power to make an order *nunc pro tunc,* the purpose of which is to give effect to its mandate as of a time anterior to that when it was in reality

made." The trouble with the decision in the Davis White Markets case, if literally applied, is to overrule sundry decisions already made in this state and to announce new law for us, and, I think, now is the time to correct the impression necessarily made by the rigid and non-elastic words used by the court in its decision in the Davis White Markets case. The facts decided in the cases cited in the opinion do not support the doctrine therein stated and herein criticised. In *Wilson* v. *Vance*, 55 *Ind.* 394, there was a motion for a new trial, and the statute of Indiana directed that such a motion was to be made at the term at which the verdict or decision was rendered, and the causes for a new trial were to be filed at the time of making the motion. And the court said: "It follows that they must be filed at *that* term. The statute is imperative, and the court cannot grant time beyond the term, against the consent of the parties." It was assumed that the respondent consented because she did not object to granting the first request, but the record showed that she did not consent to any further exception, and the court held that the causes were filed too late, and that entry *nunc pro tunc* was improper. In *Hegeler* v. *Henckell*, 27 *Cal.*. 491, it is held that if the statement, on motion for a new trial, is not filed in time, an order granting a new trial for causes appearing in such statement only, will be reversed by the appellate court. And the court said, in concluding the opinion, that at the time the motion was made, and when it was granted, the right to move for a new trial was questioned, and the court had no power to vacate and set aside the judgment. In that case, it will be observed, that the defendant had a vested right in the judgment which was entered, and the court properly decided that the order *nunc pro tunc* could not be made setting aside the judgment and granting a new trial. In *Priest* v. *McMaster*, 52 *Mo.* 60, it was held that the judge and the clerk entitled the cause in the name of the administrator and that that showed that the death of the plaintiff had been suggested, and that the administrator came into court and had his appearance entered, and that was sufficient record evidence to amend by, and the decision

was that a *nunc pro tunc* entry was unnecessary, as the record showed facts to warrant the judgment, which had been entered.

It is true that 29 *Cyc.* 1516, § B, supports the text of the opinion in Davis White Markets case. That appears under the title "Orders." However, the same work, *Vol.* 23, *p.* 840, under the title "Judgment," states every other substantive principle of law relating to the entry of judgments *nunc pro tunc.* For instance (at *p.* 840), it says: "There is an inherent common law power in courts to cause the entry of judgments *nunc pro tunc* in proper cases and in furtherance of justice. This power belongs to all courts of record, and may be exercised by an appellate court, but does not appertain to the clerk of a court. It can be exercised, however, only in cases where the cause was ripe for judgment—that is, where the case was in such a condition at the date to which the judgment is to relate back that a final judgment could then have been entered immediately." At *p.* 841: "If judgment upon a verdict is delayed by a motion for a new trial or other proceeding, or if a case tried by the court is held under advisement or delayed by exceptions, and meanwhile one of the parties dies, the court will not allow the action to abate, but will enter judgment *nunc pro tunc* as of the time when the party was still alive." At *p.* 842: "Whenever delay in entering a judgment is caused by the action of the court, as in holding the case under advisement, judgment *nunc pro tunc* will be allowed as of the time when the party would otherwise have been entitled to it, if justice requires it." And at *p.* 844: "The right to enter judgment *nunc pro tunc* is not defeated by a delay of several terms, or even several years, which is explained or justified, where justice to the parties requires it, and no intervening rights are affected."

In 34 *Corp. Jur.* 71, *tit. "Judgments,"* the same rules with reference to entry *nunc pro tunc* are stated as in *Cyc.*

And the federal courts, too, have spoken on this question. In *Mitchell* v. *Overman,* 103 *U. S.* 62; 26 *L. Ed.* 369, the Supreme Court of the United States held that where a party dies after his case is finally submitted for decision, the court

has the power to enter a decree as of the term when, in the lifetime of the party, the cause, after argument, was finally submitted for decision. In *Bell* v. *Bell,* 181 *U. S.* 175; 45 *L. Ed.* 804, it was held that a judgment of the United States Supreme Court affirming a judgment of the court below may be entered *nunc pro tunc* as of the date of the argument, where the husband has died since the argument of the cause. In *Borer* v. *Chapman,* 119 *U. S.* 587; 30 *L. Ed.* 533, the United States Supreme Court held that a judgment was properly entered *nunc pro tunc* against a person, although he was dead at the time of its entry; the failure to enter it at the proper time being due to an error of the court; that the entry of such judgment was a valid exercise of the power and discretion of the court.

Of course, the failure to enter judgment at the proper time is always, in last analysis, attributed, at least in part, in theory and intendment of law, to the court. The point is, that in these death cases no judgment had previously been entered, announced or ordered, and a *nunc pro tunc* order is the initiation of the judgment, which is so entered to avoid the necessity of revivor and substitution of parties on the record. To the same effect, in this state, are the following: *Burnham* v. *Dalling,* 16 *N. J. Eq.* 310; *Benson* v. *Woolverton,* 16 *Id.* 110, *bottom of* 111; *Molineaux* v. *Raynolds,* 55 *Id.* 187; *Clark* v. *Van Cleef,* 75 *Id.* 152, 157.

In *St. Vincent's Church* v. *Borough of Madison,* 86 *N. J. L.* 567, this court held (at *p.* 570): "In *McNamara* v. *New York, Lake Erie and Western Railroad Co.,* 56 *Id.* 56, it was held that whenever delay in entering a judgment is caused by the action of the court, judgment *nunc pro tunc* will be allowed as of the time when the party would otherwise have been entitled to it. And this doctrine is not to be held to include final judgment alone. The rule of practice is elastic enough to include any interlocutory order, as would appear from the broad language of Mr. Justice Dayton in *Den* v. *Tomlin,* 18 *Id.* 14, where he said that it is a rule of practice, as well as of common justice, that the action of the court shall not be permitted to work an injury to a party." In

this, St. Vincent's Church and other cases the court had not directed a judgment to be entered which was not entered. They were cases in which such judgment was entered solely because of the court's delay, when no announcement had been made; and the judgment was entered *nunc pro tunc* for the purpose of doing justice, and, incidentally, no vested rights were violated by such order.

This matter of entering judgment *nunc pro tunc*—especially orders and decrees in Chancery—is matter of frequent practice, and the rigid and non-elastic rule stated in the Davis White Markets case will work considerable hardship on the parties and appreciably curtail the jurisdiction of the courts, without citing the cases *contra* that rule or mentioning their doctrine; and I am of opinion that this court did not intend by anything said in the Davis White Markets case to deny to the suitors, or to curtail the established jurisdiction of the courts, of any of the the salutary principles of the law concerning the entry of orders, judgments and decrees *nunc pro tunc* in proper cases, as heretofore adjudicated.

Mr. Justice Trenchard and Mr. Justice Black have authorized me to state that they concur in the views herein expressed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.