Demetrios FASSILIS, Gerardo Castaldo and Orlando Fevola, Plaintiffs-Appellants,

v.

P. A. ESPERDY, District Director of the New York District of the Immigration and Naturalization Service, Defendant-Appellee.

Nos. 66–68, Dockets 26956–26958.

United States Court of Appeals Second Circuit.

Argued Nov. 9, 1961.

Decided March 12, 1962.

Fried & Mailman, New York City (Elmer Fried, New York City, of counsel), for plaintiffs-appellants.

Robert M. Morgenthau, U. S. Atty. (Roy Babitt, Sp. Asst. U. S. Atty., of counsel), for defendant-appellee.

Before LUMBARD, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The three plaintiffs, Fassilis, Castaldo, and Fevola, who entered the United States as crewmen, bring this consolidated appeal from orders entered in the United States District Court for the Southern District of New York that granted motions for summary judgment made in each of their cases by the defendant District Director of Immigration.[1]

Appellant Fassilis last entered this country about January 29, 1960, with permission as a member of the crew of an arriving vessel to remain here for twenty-nine days and to depart on a ship different from the one on which he arrived. On February 3, 1960, he married an American citizen. Twelve days later he filed an application with the Immigration Service under the Immigration and Nationality Act, § 245(a), 72 Stat. 699 (1958), 8 U.S.C.A. § 1255(a), for adjustment of his immigration status to that of a legal permanent resident

of the United States. From the evidence in support of the application for adjustment it appeared to the District Director of Immigration that Fassilis knew before he came to this country that if he married an American citizen he might not have to return to his native country, Greece; that he never intended to reship; that he did not intend to continue as a crewman after his marriage; and that he commenced employment ashore within a month after his arrival in this country. The appellee denied Fassilis' application on June 2, 1960, on the ground that the applicant was not a bona fide non-immigrant alien crewman and therefore under section 245(a) could not apply for an adjustment to the status of a permanent resident,[2] and on the further ground that even if Fassilis were a bona fide non-immigrant he did not deserve favorable treatment, a determination which under section 245(a) was within the discretion of the Immigration Service to grant or withhold. On August 23, 1960, the Regional Commissioner of Immigration, stating that the application was denied as a matter of discretion, affirmed the decision of the District Director. He made no reference to an amendment to the Immigration and Nationality Act that became effective on July 14, 1960. Until July 14, 1960, section 245(a) of the Immigration and Nationality Act had provided in pertinent part:

"The status of an alien who was admitted to the United States as a bona fide nonimmigrant may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence * * *."

On that date, after the District Director's rejection of Fassilis' application

1. Fassilis v. Esperdy, 192 F.Supp. 84 (S.D.N.Y.1961); Castaldo v. Esperdy, Case No. 60 Civil 4530, S.D.N.Y., March 2, 1961; Fevola v. Esperdy, Case No. 60 Civil 4278, S.D.N.Y., March 2, 1961.

2. In United States ex rel. Feretic v. Shaughnessy, 221 F.2d 262 (2 Cir.), cert.

denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955), we have held that an alien crewman whose intention at the time he entered this country was to remain permanently in the United States was precluded from establishing that he had made a bona fide non-immigrant entry.

and prior to the affirmance of the rejection by the Regional Commissioner, the statute was amended as follows:

"The status of an alien, *other than an alien crewman,* who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence * * *." (Emphasis added.) 74 Stat. 505 (1960).

Appellant Castaldo entered this country as a crewman on January 14, 1956. On July 25, 1958, he married an Italian national who subsequently became a naturalized American citizen. Castaldo filed an application for adjustment of status on May 27, 1960. The evidence before the District Director indicated that this 1956 entry was Castaldo's first entry into this country as a crewman; that he left his ship within hours after its docking in Virginia and went to New York City; that he never inquired about his vessel's future sailing particulars or need for his services; that he never tried to reship; that almost immediately after he arrived here he planned to stay here; and that he accepted unauthorized employment ashore shortly afterwards. The appellee denied Castaldo's application for legal permanent resident status on July 1, 1960, for the same reasons that he denied Fassilis' application. On September 29, 1960, the Regional Commissioner affirmed the appellee's decision without referring to the amendment of July 14, 1960.

Appellant Fevola entered this country as a crewman and here married an American citizen some time prior to July 14, 1960. He filed his application for adjustment of his status to that of a legal permanent resident on May 26, 1960. The evidence presented in his case tended to show that Fevola had deserted his ship within a day after its arrival, that he had taken employment ashore, and that he had neither registered as an alien nor registered under the Selective Service Act. On July 13, 1960, one day before the amendment quoted above, the District Director denied Fevola's application for the same reasons as those advanced in the cases of Fassilis and Castaldo. On September 13, 1960, the Regional Commissioner affirmed the District Director, without referring to the July 14 amendment.

The three men brought actions in the United States District Court for the Southern District of New York pursuant to the Administrative Procedure Act, § 10; 60 Stat. 243 (1946), 5 U.S.C.A. § 1009, and the Immigration and Nationality Act, § 279, 66 Stat. 230 (1952), 8 U.S.C.A. § 1329, for review of these administrative decisions. In each case the District Director of Immigration moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. In an opinion reported at 192 F. Supp. 84 (S.D.N.Y.1961), the district judge granted the defendant's motion against Fassilis on two theories—first, that there was no abuse by the administrative officials of the discretion given by the statute, and, second, that the July 14, 1960 amendment to section 245 of the Immigration and Nationality Act that became law while the administrative appeal was pending precluded crewmen after that date from obtaining permanent resident status under that section. The district judge also granted summary judgment in the cases of the other two seamen, incorporating therein by reference his opinion in the Fassilis case. The three crewmen now join in this single appeal from these adverse decisions below.

■ We affirm the district court, for the rule announced in Ziffrin Inc. v. United States, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621 (1943), defeats the contentions of these appellants. The Ziffrin case involved an application to the Interstate Commerce Commission for a permit to continue certain contract carrier operations. Between the date of the initial hearing on the carrier's application and the date on which the Commission entered its final order of denial, the Interstate Commerce Commission Act

§ 210, 49 Stat. 554 (1935), was amended by the Transportation Act of 1940, § 21(a), 54 Stat. 923, 49 U.S.C.A. § 310, in such a way that, if the amendment were applicable to Ziffrin's application, the application had to be denied. The Supreme Court held that the Interstate Commerce Commission was required to follow the amendment, and, therefore, the Commission had properly rejected the application. The Court stated:

> "It is unnecessary, however, to decide whether the Commission correctly applied Section 210 as originally enacted to such common control as the Commission found in appellant and Ziffrin Truck Lines, Inc. We are convinced that the Commission was required to act under the law as it existed when its order of May 29, 1941, was entered. The permit was effective for the future and the amendment forbade persons under common control holding both a permit and a certificate. Previously appellant had been operating under an ex parte permit. Protests to the grant had been made on account of the dual operation, the formal hearing was held and the question raised by these protests was heard at length. A change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327, and cases cited. Cf. Duplex Printing Press Co. v. Deering, 254 U.S. 443, 464, 41 S.Ct. 172, 175, 65 L.Ed. 349, 16 A.L.R. 196. A fortiori, a change of law pending an administrative hearing must be followed in relation to permits for future acts. Otherwise the administrative body would issue orders contrary to the existing legislation."
> [318 U.S. 73, 78, 63 S.Ct. 465, 469.]

In the present case there was a similar statutory change between the filing of the appellants' applications and the ultimate administrative decision disposing of these applications. And just as each application of each of these three crewmen seeks a change from a present status to a different future one, the application by Ziffrin was for permission to operate in the future as a particular kind of carrier. Therefore, we hold that the July 14, 1960 amendment to the Immigration and Nationality Act was applicable to the appellants' applications, and the results reached by the Immigration Service were valid. Cf. McLarty v. Borough of Ramsey, 270 F. 2d 232 (3 Cir. 1959).

In reaching this result we point out that the July 14, 1960 amendment is not being applied retroactively. While the appellants' applications were still subject to administrative adjudication, the appellants had no established right to the future status that they were seeking to obtain by their applications. This was especially so since the statute here involved made the granting of such applications a matter wholly within the discretion of the Service. The holding in United States v. Magnolia Petroleum Co., 276 U.S. 160, 48 S.Ct. 236, 72 L.Ed. 509 (1928), cited by the appellants, is not an inconsistent one. There the Commissioner allowed a taxpayer's claim for a refund with interest for taxes erroneously paid; but, after the Commissioner had determined the amount of this interest and had notified the taxpayer of the amount of interest payable to it, a new Revenue Act was passed that changed the method of computing the interest. Under this new act the Commissioner tendered a less sum to the taxpayer than the taxpayer was earlier informed that it would receive under the former act. The Supreme Court held that the Commissioner should have continued to settle the interest as it had been computed under the former act.

The situation there was quite different from that of the three appellants here. There the Commissioner had established that the taxpayer was entitled to relief before the amendment became law and the computation of the interest under the new amendment retroactively deprived the taxpayer of property award-

ed it under the old law. Here the aliens had acquired no status prior to the amendment that they were deprived of by the amendment, for the status each of them sought the agency to award them was not acquirable until final administrative action upon their applications.

Although not determinative of the result we should reach, it is not without significance that when Congress amended Section 245 of the Immigration and Nationality Act of 1952 to preclude its application to crewmen, it did not enact a savings clause to protect pending administrative proceedings as it had done when that Act was adopted. Immigration and Nationality Act of 1952, § 405(a), 66 Stat. 280 (1952), 8 U.S.C.A. § 1101 note;[3] see United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955).

█ The appellants also assert that the Regional Commissioner did not deny their applications on the ground that the July 14, 1960 amendment precluded him from granting the applications, but denied them pursuant to the discretionary power granted the Attorney General under the statute; and that upon review the propriety of his action must be judged only with reference to the ground upon which the action was based. The Supreme Court in SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), has set out the proper scope of our review under circumstances such as these.

"In confining our review to a judgment upon the validity of the grounds upon which the Commission itself based its action, we do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.' Helvering v. Gowran, 302 U.S. 238, 245, 58 S. Ct. 154, 158, 82 L.Ed. 224. The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate. But it is also familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury. Like considerations govern review of administrative orders. If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency." [318 U.S. 80, 88, 63 S.Ct. 454, 459.]

3. Section 405 of act of June 27, 1952, provided in part that:

"(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [sic], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. When an immigrant, in possession of an unexpired immigrant visa issued prior to the effective date of this Act, makes application for admission, his admissibility shall be determined under the provisions of law in effect on the date of the issuance of such visa."

We affirm the decisions of the district court on the ground that the Commissioner was required by the new amendment to deny the applications. The question that we decide is that of the proper timing of the amendment's applicability. This is not a question of policy or of judgment committed by Congress to the expertise and decision of administrative tribunals. We are approving the correct results reached by the Regional Commissioner on a ground which is suitable for appellate judicial determination. See the Administrative Procedure Act, § 10 (e) (B) (3), 60 Stat. 243 (1946); 5 U.S. C.A. § 1009(e) (B) (3). Since we conclude that the result reached by the Commissioner was one in which he had no discretion it is unnecessary for us to decide whether he properly exercised a discretion which he erroneously believed himself to have.

The appellants assert that they have been prejudiced by the lapse of time between the decision of the District Director and that of the Regional Commissioner and cite in support of their position the following cases: Mitchell v. Overman, 103 U.S. 62, 26 L.Ed. 369 (1880); Application of Martini, 184 F. Supp. 395 (S.D.N.Y.1960); Fragale v. Rogers, 175 F.Supp. 658 (E.D.N.Y. 1959); Matter of Vacontios, 155 F.Supp. 427 (S.D.N.Y.1957); and Lee Bang Hong v. Acheson, 110 F.Supp. 48 (D. Hawaii 1951). In the Mitchell case the Supreme Court stated:

"[T]he rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up. In such cases, upon the maxim *actus curiae neminem gravabit,*—which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice,—it is the duty of the court to see that the parties shall not suffer by the delay." [103 U.S. 62, 65.]

The other cases cited above apply this principle to situations involving prejudicial delays in the administrative proceedings. However sound the results in these cases may have been, the cases are inapposite to the consolidated appeal before us, for here there were no substantial delays on the part of the administrative agency which operated to deprive the applicants of any right to which any of them was entitled.

The judgments below are affirmed.