In re GENERAL DEVELOPMENT
CORPORATION, et al.,
Debtors.

CONTINENTAL CASUALTY
COMPANY, Appellant,

v.

GENERAL DEVELOPMENT CORPO-
RATION and Florida Department
of Revenue, Appellees.

Nos. 93–1666–CIV, 90–12231–BKC–AJC.

United States District Court,
S.D. Florida.

March 15, 1994.

Mark Freund, Mark Freund, P.A., Thomas J. Guilday, Huey, Guilday, Kuersteiner & Tucker, P.A., Tallahassee, FL, for Continental Cas. Co.

Arthur J. England, Jr., Mark D. Bloom, Paige A. Harper, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, for General Development Corp.

Jeffrey M. Dikman, Asst. Atty. Gen., Dept. of Legal Affairs, Tax Section, Tallahassee, FL, for Florida Dept. of Revenue.

### ORDER AFFIRMING DECISION OF BANKRUPTCY COURT

ARONOVITZ, District Judge.

This is an appeal by Continental Casualty Company ("CCC") from three related orders entered by Judge A. Jay Cristol of the United States Bankruptcy Court for the Southern District of Florida relating to the payment of Florida corporate income taxes for the years 1974, 1975 and 1976. These orders are (1) Order Granting in Part and Denying in Part Motion to Vacate Order Approving Settlement Agreement Between Debtor and Florida Department of Revenue; to Approve Settlement De Novo, Nunc Pro Tunc, dated November 14, 1991; (2) Order on Continental Casualty Company's Motion for Rehearing of November 14, 1991 *Nunc Pro Tunc* Order on GDC–DOR Settlement, dated December 10, 1992; and (3) Second Order on Continental Casualty Company's Motion for Rehearing of November 14, 1991 *Nunc Pro Tunc* Order on GDC–DOR Settlement, dated March 5, 1993. This appeal has been referred to by the parties and the Court as the *"Nunc Pro Tunc* Appeal." [1]

The Court has carefully considered the briefs on appeal, oral argument of counsel, the record on appeal, the decisions of the lower court and the applicable law, and is otherwise fully advised in the premises. For the following reasons, this Court AFFIRMS the decision of the Bankruptcy Court.

### Factual and Procedural Background

In February of 1979, Appellee Florida Department of Revenue ("DOR") issued a notice of deficiency to Appellee General Development Corporation ("GDC" or the "Debtor"), stating a net tax deficiency of $1,909,110.00 for the years 1974, 1975 and 1976. Discussions between the parties later resulted in a revised tax claim of $1,219,379.00. In accordance with DOR regulations, GDC appealed the notice of deficiency by commencing an action in the circuit court for the Second Judicial Circuit in Leon County, Florida (the "state court action") in June of 1981. Appellant CCC is a surety company that provided a bond to GDC at the commencement of the state action in the amount of $1,958,530.00.

DOR and GDC continued to litigate the state action and on April 6, 1990, GDC filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Subsequent negotiations between the parties resulted in a proposed settlement agreement which was approved by the Bankruptcy Court by Order dated September 14, 1990 (the "Settlement Order") after a hearing. The approved terms of the settlement permitted, *inter alia,* the lifting of the automatic stay for the "limited" purposes of:

(1) Allowing DOR to make demand for payment of the Liability from GDC; (2) Allowing the entry of a Judgment against GDC in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida in the amount of the Liability, $1,958,530 (the "Judgment"); and (3) Allowing DOR to pursue any and all remedies DOR may have against the bond posted in connection with the Action.

Pursuant to the approved settlement agreement, the state court entered a consent final judgment against GDC on September 28, 1990 for the sum of $1,958,530.00. CCC first became aware of the DOR/GDC settlement and the Settlement Order when DOR sought to enforce the consent final judgment against it to recover on the bond. CCC objected, claiming that its due process rights were violated by GDC's failure to provide proper notice and an opportunity to be heard on the settlement motion in the bankruptcy proceeding. The state court declined to enforce the judgment against CCC.

DOR thereafter moved the Bankruptcy Court to vacate the Settlement Order and to approve the GDC/DOR settlement *de novo*

---

1. This appeal was once consolidated with another appeal involving the same parties and facts under Case No. 92–1162–CIV–ARONOVITZ. After an examination of the file and hearing oral argument thereon, the issues raised by the two appeals and the totality of the circumstances, the Court deemed it appropriate to consider the appeals separately and the appeals were separated into the two discrete actions: (1) the *"Nunc Pro Tunc* Appeal" under Case No. 93–1666–CIV–ARONOVITZ; and (2) the "Priority Appeal" under Case No. 93–1665–CIV–ARONOVITZ. This opinion applies only to the *Nunc Pro Tunc* Appeal.

on a *nunc pro tunc* basis. At the hearing on DOR's motion, CCC presented its due process argument and attacked the GDC/DOR settlement as being fraudulently entered into. On November 14, 1991, the Bankruptcy Court entered the Order Granting in Part and Denying in Part Motion to Vacate Order Approving Settlement Agreement Between Debtor and Florida Department of Revenue; to Approve Settlement De Novo, Nunc Pro Tunc (hereinafter referred to as the "*Nunc Pro Tunc* Order").

In the *Nunc Pro Tunc* Order, the lower court approved and ratified the DOR/GDC settlement agreement previously approved in the Settlement Order on September 14, 1990. It vacated and reinstated, *nunc pro tunc*, the Settlement Order as of September 14, 1990. The Order also provided that it "in no way determines whether *CCC* is liable on the bond posted" in the state court action as such determination rests with the state court. In addition, the Order stated that "[w]ith the exception of finding that the Settlement Agreement was entered into absent 'fraud or collusion,' this Court makes no ruling upon any defense which CCC has raised in the [state court] Action."

CCC filed a motion for a rehearing, claiming that (1) the effective date of the settlement should be October 23, 1991, the date of the hearing on DOR's motion to vacate and reinstate, and not the *nunc pro tunc* date of September 14, 1990 because CCC had no opportunity to object or be heard on September 14, 1990; (2) the settlement improperly established GDC's tax liability rather than merely liquidating DOR's claimed amount of taxes due; (3) the agreement that DOR would seek recourse for its claim against CCC rather than from GDC violated CCC's state law right of exoneration; and (4) the *Nunc Pro Tunc* Order improperly exposed CCC to liability for prejudgment interest payments from September 14, 1990 through October 23, 1991.

A hearing on CCC's motion for a rehearing was held on December 18, 1991 and resulted in the entry of the Order on Continental Casualty Company's Motion for Rehearing of November 14, 1991 *Nunc Pro Tunc* Order on GDC–DOR Settlement, dated December 10, 1992 (hereinafter referred to as the "First Rehearing Order"). In that Order, the lower court again approved and ratified the DOR/GDC settlement agreement and determined that the factual circumstances warranted the entry of a *nunc pro tunc* order as of September 14, 1990. It also revised the *Nunc Pro Tunc* Order to reflect that the settlement agreement merely liquidated the amount of DOR's claim and not make a substantive determination of GDC's tax liability. In addition, a hearing was set on December 30, 1992 to hear additional arguments on CCC's due process arguments arising from the interest payments.

Prior to the scheduled hearing, DOR waived its claim for prejudgment interest from the period September 14, 1990 through October 23, 1991. Nonetheless, the hearing was held as scheduled and resulted in the entry of the Second Order on Continental Casualty Company's Motion for Rehearing of November 14, 1991 *Nunc Pro Tunc* Order on GDC–DOR Settlement (hereinafter referred to as the "Second Rehearing Order") on March 5, 1993. In that Order, the Bankruptcy Court held that DOR's waiver of all claim to interest during the disputed time period rendered CCC's due process claim moot, reiterated that the settlement agreement liquidated DOR's "tax claim" as opposed to determining GDC's "tax liability," and reiterated that the *nunc pro tunc* provision of the *Nunc Pro Tunc* Order was valid and remained in full effect.

This appeal followed. CCC contends on appeal that it can not be bound by the *Nunc Pro Tunc* Order (and the two subsequent orders clarifying and reaffirming the *Nunc Pro Tunc* Order) as of September 14, 1990. It concedes that it can be bound by the orders as of October 23, 1991, the date on which CCC first presented its objections to the GDC/DOR settlement agreement to the Bankruptcy Court.

**Discussion**

The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a) (West 1993).

CCC raises three issues in this appeal: (1) whether CCC's due process rights were violated by the Bankruptcy Court's reinstate-

ment of its Settlement Order, *nunc pro tunc,* as of September 14, 1990; (2) whether the Bankruptcy Court abused its discretion in reinstating the GDC/DOR settlement agreement on a *nunc pro tunc* basis; and (3) whether the Bankruptcy Court had jurisdiction to issue an order regarding a controversy between two non-debtors, DOR and CCC. The Court will address these issues *seriatim.*

## A. CCC'S PROCEDURAL DUE PROCESS RIGHTS

■ The Fifth Amendment of the United States Constitution provides that no person shall be "deprived of life, liberty or property, without due process of law." U.S. CONST. amend. V. It is well established that creditors' rights in bankruptcy cases are property interests that are protected by the Fifth Amendment and that cannot be impaired without notice and an opportunity to be heard. *See, e.g., City of New York v. New York, New Haven & Hartford Railroad Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *Reliable Electric Co., Inc. v. Olson Construction Co.,* 726 F.2d 620, 623 (10th Cir.1984); *In re Bilder,* 108 B.R. 666, 667 (Bankr.E.D.Wis.1989).

■ Since CCC is the surety on the bond issued in the state court litigation between GDC and DOR, it certainly had a property interest in the settlement of that action. It is undisputed that CCC did not receive prior notice of the GDC/DOR settlement agreement and thus did not have an opportunity to be heard at the bankruptcy hearing approving said settlement. In this regard, the Settlement Order entered on September 14, 1990 violated CCC's procedural due process rights in the first instance.

■ The next inquiry is whether this violation was sufficiently rectified so as to adequately protect CCC's rights. CCC apparently takes the position that once its due process rights have been violated, that violation can never be corrected regardless of any subsequent opportunities it may have had to object to the settlement. The Court disagrees with this extreme position. It finds that any violations of CCC's due process rights were sufficiently cured on a *nunc pro tunc* basis.

The original Settlement Order was vacated by the Bankruptcy Court and reinstated only after the court heard all the objections and complaints CCC saw fit to lodge against the GDC/DOR settlement agreement. In fact, as detailed above, CCC was afforded ample opportunity to be heard on the settlement agreement on no less than three separate occasions: CCC was heard at the October 23, 1991 hearing, the December 18, 1991 hearing which was held at CCC's request, and the December 30, 1992 hearing. The record unequivocally establishes that CCC was present and fully participated at each hearing. On appeal, CCC specifies absolutely no objection it had against the settlement agreement that was not presented to the lower court.

A creditor's due process rights are not violated where the creditor has suffered no prejudice. *See, e.g., Cedar Bluff Broadcasting, Inc. v. Rasnake,* 1991 WL 141035 (4th Cir.1991) (general creditors' procedural due process claim dismissed where they failed to establish prejudice as a result of lack of notice); *In the Matter of Bleaufontaine, Inc.,* 634 F.2d 1383, 1387 n. 5 (5th Cir.1981) (arguably defective notice caused no due process violation where counsel attended many of the hearings on proposed property sale); *In re Vanguard Oil & Service Co.,* 88 B.R. 576, 580 (E.D.N.Y.1988) (no due process violation where no prejudice shown).

Based upon a careful review of the record, the Court finds that CCC has suffered no prejudice as the result of GDC's failure to notify CCC of the settlement agreement and the settlement hearing. Specifically, the lower court's orders did not in any way abridge CCC's rights in the state court action. The lower court clarified more than once that the settlement agreement merely liquidated DOR's "tax claim" and did not determine GDC's "tax liability." Most importantly, the *Nunc Pro Tunc* Order and the Second Rehearing Order specifically provided that the lower court was not adjudicating CCC's liability on the bond nor was it making any rulings on any of CCC's defenses as such matters were better left for the state court. Thus, the determination of CCC's liability and its defenses, including the defense of

exoneration, were preserved for litigation in the state court action. Under these circumstances, CCC suffered no prejudice with respect to its rights in the state action. In addition, CCC's exposure to prejudgment interest from the period September 14, 1990 to October 23, 1991 did not result in any prejudice as DOR waived its claim for such interest.

The prejudice CCC claims to have suffered, or will suffer, is DOR's ability to enforce against it a state court judgment that is based on a settlement agreement approved on September 14, 1990 when CCC was not present at the approval hearing. CCC readily admits that it would not object if the state court judgment was based on a settlement agreement approved on *October 23, 1991* rather than on September 14, 1990. Thus, the crux of CCC's prejudice claim lies in the lower court's reinstatement of the Settlement Order on September 14, 1990, *nunc pro tunc,* rather than a year later on October 23, 1991.

While the Court can speculate as to the reasons for CCC's position regarding this one year period, they have not been made known to the Court.[2] Even after oral argument on the merits of the appeal, CCC still has not demonstrated to the Court how the passage of one year has or will materially affect it rights and interests. CCC simply argues that for a one year period, its procedural due process rights were violated and therefore, it can not be bound by a *nunc pro tunc* order reinstating the Settlement Order as of September 14, 1990. The Court finds this argument without merit.

CCC has wholly failed to demonstrate any concrete harm that has or may result from the lower court's *nunc pro tunc* reinstatement of the settlement agreement as of September 14, 1990 as opposed to October 23, 1991. The "prejudice" alluded to by CCC is not supported by the facts of this case and the realities of the present circumstances. It exists, if at all, in the abstract. CCC simply disregards the post-deprivation hearings afforded to it by the lower court, first on

October 23, 1991, again on December 18, 1991 and again on December 30, 1992. It disregards the fact that the lower court reinstated the Settlement Order only after hearing CCC's challenges, both substantive and procedural, to the GDC/DOR settlement. It disregards the fact that at its own request, the lower court clarified its orders to make crystal clear that it was not adjudicating CCC's liability on the bond and that that matter, as well as all of CCC's defenses, were matters better left to be resolved in the state court action.

This Court, however, is not inclined to ignore the considerable efforts made by the lower court (over the course of the four years that this bankruptcy case has been pending) to ensure that CCC's rights were adequately protected. Rather, the Court finds that the three post-deprivation hearings and the rulings that resulted therefrom amply protected CCC's rights and interests in he GDC/DOR settlement.

Based upon the foregoing, this Court holds that CCC has suffered no real prejudice as the result of any procedural due process violations it may have suffered in the first instance. Any procedural due process violations were sufficiently cured by the three post-deprivation hearings conducted by the lower court.

## B. SCOPE OF *NUNC PRO TUNC* RELIEF

■ It is well settled that courts, including bankruptcy courts, have the discretion to enter orders on a *nunc pro tunc* basis. *See, e.g., Armstrong v. Fernandez,* 208 U.S. 324, 28 S.Ct. 419, 52 L.Ed. 514 (1908); *Weil v. Markowitz,* 898 F.2d 198, 200 (D.C.Cir.), *cert. denied,* 498 U.S. 821, 111 S.Ct. 68, 112 L.Ed.2d 42 (1990) (whether to grant *nunc pro tunc* relief is "best left to the discretion" of court); *In the Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983) (bankruptcy court, sitting as a court of equity, has sound discretion to consider whether a *nunc pro tunc* order should be issued to validate a

---

2. It has been suggested by way of oral argument by GDC's and DOR's respective attorneys that CCC is seeking to use the initial procedural due process violation it suffered in the bankruptcy

proceeding to gain an advantage or a more favorable result in the state court action. The Court makes no findings with respect to this contention.

previous failure to obtain requisite court approval); *In re Schubert*, 143 B.R. 337 (S.D.N.Y.1992) (court has discretion to issue *nunc pro tunc* order). Whether a *nunc pro tunc* order should be made depends on the circumstances of the particular case. *See Mitchell v. Overman*, 103 U.S. 62, 26 L.Ed. 369 (1880). It should be granted or refused "as the justice of the cause may require." *Id.* 103 U.S. at 65. The trial court's decision thereon may be reversed only upon a finding of abuse of discretion. *See, e.g., In the Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1170 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993) (bankruptcy court did not abuse discretion in granting orders *nunc pro tunc* ); *In re Pierce*, 809 F.2d 1356 (8th Cir.1987) (abuse of discretion standard applicable to *nunc pro tunc* relief); *In re Florida Airlines, Inc.*, 110 B.R. 570 (M.D.Fla.1990) (abuse of discretion standard applicable to *nunc pro tunc* relief).

CCC argues that the reinstatement of the Settlement Order, *nunc pro tunc*, was an improper exercise of *nunc pro tunc* relief. It relies on *Cypress Barn, Inc. v. Western Electric Co., Inc.*, 812 F.2d 1363 (11th Cir.1987), where the Court of Appeals for the Eleventh Circuit stated that "[a] *nunc pro tunc* order merely recites court actions previously taken but not properly or adequately recorded." [3] *Id.* at 1364. CCC claims that the *Nunc Pro Tunc* Order in this case materially altered the effect of the GDC/DOR settlement beyond that which is permissible under *Cypress Barn*.

■ The record does not support CCC's contention. It shows that other than a correction of a typographical error, the substance of the settlement agreement was left unchanged.[4] Thus, the settlement agreement that was reinstated was substantively the same agreement that was approved originally. CCC also argues that by ruling on its

fraud and collusion claim, the *Nunc Pro Tunc* Order improperly rewrote the history of the case. Beside the fact that it was *CCC* that raised the fraud/collusion claim for the lower court's consideration, the *nunc pro tunc* portion of the Order affected only the reinstatement of the Settlement Order and does not appear to pertain to CCC's claim of fraud and collusion.

In addition, as stated above, the Court rejects CCC's claim that once a procedural due process violation has occurred, it can never be remedied, not even on a *nunc pro tunc* basis. CCC's position on this point is undermined by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which held that state post-deprivation remedies may constitute adequate due process for deprivations that otherwise would violate the procedural due process clause. While *Parratt* involved an entirely different factual situation (subsequent tort proceedings), inherent in its holding is the notion that post-deprivation remedies can in certain circumstances be adequate to cure a procedural due process violation. *See also, Lucas v. Chapman*, 430 F.2d 945 (5th Cir.1970) (court directed school board to conduct *nunc pro tunc* hearing to remedy procedural due process violation).

Based on the foregoing, the Court finds that the lower court did not abuse its discretion in entering *nunc pro tunc* relief under the factual circumstances of this case.

## C. JURISDICTION OF THE BANK-RUPTCY COURT

■ Finally, CCC maintains that the lower court lacked jurisdiction to enter the orders on appeal because said orders were really a determination of a dispute between two non-debtors, CCC and DOR. The Court disagrees.

---

**3.** In *Cypress Barn,* the district court attempted to use a *nunc pro tunc* order to reinstate a previously dissolved injunction. The Eleventh Circuit held that the use of a *nunc pro tunc* order is improper where a nonparty, without notice of the *nunc pro tunc* order, was found in contempt by the district court for violating the allegedly reinstated injunction. Under those circumstances, the interests of justice certainly were not

served by the *nunc pro tunc* order in *Cypress Barn.* The facts of this case clearly are different than those in *Cypress Barn.*

**4.** The Settlement Order erroneously stated a settlement amount of $1,985,530.00. The *Nunc Pro Tunc* Order corrected that sum to be $1,958,530.00.

It is well settled that bankruptcy courts have jurisdiction to approve a settlement of a claim against the debtor. *See* Bankruptcy Rule 9019; *MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89, 93 (2d Cir.1988) (bankruptcy court had authority to approve settlements); *In the Matter of AWECO, Inc.,* 725 F.2d 293, 297 (5th Cir.1984) (same). It is further well established that a bankruptcy court has the power to lift its stay on state court litigation in which the debtor is a party. *See* 11 U.S.C. § 362(a)(1) (West 1993). These are precisely the actions taken by the lower court in this case in entering the orders at issue. The lower court approved the settlement of DOR's claim against the Debtor and lifted the automatic stay on the state court action so that the settlement could be reduced to a final judgment. It logically follows that the lower court had jurisdiction to vacate its approval of the GDC/DOR settlement and then to reinstate said approval on a *nunc pro tunc* basis.

In addition, as explained in detail above, the record shows that the lower court did not adjudicate the dispute between CCC and DOR but rather, expressly left that dispute to be litigated in the state court action.

### Conclusion

Based upon the foregoing, the Court hereby AFFIRMS the lower court's decisions set forth in the (1) Order Granting in Part and Denying in Part Motion to Vacate Order Approving Settlement Agreement Between Debtor and Florida Department of Revenue; to Approve Settlement De Novo, Nunc Pro Tunc, dated November 14, 1991; (2) Order on Continental Casualty Company's Motion for Rehearing of November 14, 1991 *Nunc Pro Tunc* Order on GDC–DOR Settlement, dated December 10, 1992; and (3) Second Order on Continental Casualty Company's Motion for Rehearing of November 14, 1991 *Nunc Pro Tunc* Order on GDC–DOR Settlement, dated March 5, 1993.

As explained herein, the Court finds that any initial violations of CCC's procedural due process rights were cured on a *nunc pro tunc* basis via the three aforementioned hearings held by the lower court; that *nunc pro tunc* relief was proper and the *Nunc Pro Tunc* Order valid; and that the lower court had jurisdiction to adjudicate this matter.

Accordingly, the Court further finds that GDC owes DOR the sum of $1,958.530.00 for Florida corporate income taxes for the years 1974, 1975 and 1976 pursuant to the terms of the GDC/DOR settlement agreement and the Consent Final Judgment entered on September 28, 1990. This opinion makes no rulings whatsoever as to the effect of this opinion or of the GDC/DOR settlement agreement to the bond posted by CCC in connection with the state court action as such matters are better left to the state court. In addition, the rulings made in this opinion apply singularly and discretely to the parties herein and to the lower court proceedings specifically discussed herein.

DONE AND ORDERED.