**Bertha L. CAIRNS, Plaintiff-Appellee,**

v.

**Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant-Appellant.**

**No. 71–1401.**

United States Court of Appeals, Tenth Circuit.

April 12, 1972.

---

2. No. 26,568, R.T. at 164.

3. United States v. Kramer, 289 F.2d 909, 913 (2d Cir. 1961).

James P. Johnston, Wichita, Kan., on brief, for plaintiff-appellee.

William D. Appler, Dept. of Justice, Washington, D. C. (Michael H. Stein, Dept. of Justice, Washington, D. C., on the brief), for defendant-appellant.

Before LEWIS, Chief Judge, and PICKETT and DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

This proceeding was brought pursuant to 42 U.S.C. § 405(g) to review the final decision of the Secretary of Health, Education and Welfare partially denying a claim for resumption of mother's insurance benefits allowable under 42 U.S.C. § 402(g). The district court reversed the determination of the Secretary and remanded the case with instructions to allow the resumption of benefit payments to petitioner prior to the date theretofore fixed by the Secretary.

The facts are undisputed. Claimant Bertha L. Cairns, based upon the earnings record of her deceased husband, made application for and was granted mother's insurance benefits commencing in September of 1959. On November 16, 1962 she married William H. Tucker in a ceremonial marriage in Oklahoma and upon report of this remarriage, benefits were terminated effective November of 1962.

Claimant and Tucker returned to Kansas following their marriage and lived together as husband and wife until June of 1967 when, because of marital difficulties, they separated. Shortly thereafter, claimant discovered that at the time of the Oklahoma marriage in 1962, Tucker's divorce from his former wife was not final and did not become final until July 1, 1964. In August, 1967 the claimant, alleging that Tucker on November 16, 1962 had a living spouse, secured an annulment of her ceremonial marriage to Tucker.[1] The parties as did the trial court, assumed that no marital status resulted from this ceremonial marriage.

Relying on the decree of annulment, Mrs. Cairns then made application for resumption of mother's insurance benefit payments. The application was denied on the ground that although the ceremonial marriage had been dissolved, under Kansas decisions a common-law marriage existed between the claimant and Tucker because the parties continued to live together as husband and wife after Tucker's divorce became final in 1964.

While these review proceedings were pending, the trial court granted the Secretary's request to remand the case for further consideration of two nunc pro tunc orders which had been entered by the District Court of Sedgwick County, Kansas in the annulment case after the Secretary denied renewal of benefits. The first order dated February 28, 1968 decreed:

"(T)he alleged marriage which took place between the parties herein (Bertha Cairns and William Tucker) on November 16, 1962, was a nullity and should be and the same is hereby set aside and held for naught as if it had never taken place."

1. The annulment order reads, "(P)laintiff be and she is hereby granted an annulment of the marriage of November 19, 1962, and the same is hereby set aside and held for naught as if it had never taken place."

The second order, entitled "Additional Nunc Pro Tunc Order," dated June 21, 1968, stated:

"(T)hat any marriages that took place after the Journal Entry in . . . (the divorce proceeding between William H. Tucker and Marion Josephine Tucker) became effective was a nullity and should be and the same is hereby and are hereby set aside and held for naught as if the same had never taken place."

The Secretary upon reconsideration apparently concluded that, for the purposes of the Social Security Act, the last order effectively dissolved the common-law marriage, and thus allowed benefits from that date. In disagreeing with the Secretary, the trial court reasoned that the District Court of Sedgwick County, Kansas had jurisdiction to grant annulments and it was bound by the nunc pro tunc order which purportedly annulled any marriage that may have existed between the claimant and Tucker after the entry of the divorce decree.

■ The Kansas statutes authorize the state district courts to grant annulments of marriages upon stated grounds. K.S.A. § 60–1602 (1964). But this statute does not give the state courts power to annul a valid existing common-law marriage, for an unknown reason, by the entry of a nunc pro tunc order in an action specifically directed to annul a ceremonial marriage which was based solely on the ground that one of the parties had a wife living at the time of the marriage ceremony. No attack was made on the common-law marriage in the annulment proceedings and the nunc pro tunc orders stated that they were for the purpose of clarifying the record "for the Social Security Department." Consequently, the issue here is the status of the common-law marriage at the time the request for renewed benefits was made.

■■ Clearly, under numerous Kansas decisions, where one of the parties to a marriage has at the time a living wife, the marriage "is *void, absolutely and in all its aspects*." In such cases, although it is not necessary, an innocent party "may, however, maintain an action in equity to have such colorable marriage declared null and void." Johnson County National Bank and Trust Co. v. Bach, 189 Kan. 291, 369 P.2d 231, 234 (1962). The Kansas law is equally clear that if the parties to a void marriage ceremony "continue to live together as husband and wife after the marriage restrictions are removed they become husband and wife in fact under the common-law." Burnett v. Burnett, 192 Kan. 247, 387 P.2d 195, 197 (1963). In this case, the parties continued to live together as husband and wife after the husband's divorce became final and consequently a valid subsisting marriage thereafter existed by the common-law.

■ The only remaining question is what effect the annulment decree and the two nunc pro tunc orders had on the marital status of the claimant with regard to the common-law marriage. The annulment decree had no effect on the common-law marriage as it was directed only to the ceremonial marriage. Claimant's position is not clear, but apparently the argument is that the intent of the last nunc pro tunc order was to annul the common-law marriage also and that the Secretary is bound by it. As stated before, the issue of the validity of the common-law marriage was never before the court in the annulment proceedings, and the present marital status of the parties was not an issue. The Kansas Supreme Court, in Burnett v. Burnett, *supra*, at 198, appropriately stated:

"In a proceeding to annul a marriage, the trial court has the responsibility of seeing that the marital status is not disturbed unless clearly sanctioned by law. The marriage relationship is a matter of public concern. Proceedings to dissolve marriages are not favored under the law. Annulment proceedings are equitable in nature and equitable principles should prevail. In an annulment proceeding it is the present marital status that is

to be considered, not whether a prior marriage between the parties was void.

"When appellant's pleadings alleged facts constituting a common-law marriage, and the undisputed evidence supported the allegations, the trial court was without authority to annul the Oklahoma marriage and dispose of the property of the parties as in an annulment proceeding. The decree annulling the Oklahoma marriage accomplished nothing. The parties were still husband and wife under the common-law."

All courts have the inherent power to enter orders nunc pro tunc to show that their previous unrecorded acts ought to have been shown at that time. Matthies v. Railroad Retirement Board, 341 F.2d 243 (8th Cir. 1965). The function of a nunc pro tunc order is to recite the action theretofore taken but not properly or adequately recorded. Miller v. Hand, 187 Kan. 352, 356 P.2d 837 (1960); Tafarella v. Hand, 185 Kan. 613, 347 P.2d 356 (1959); Ramsey v. Hand, 185 Kan. 350, 343 P.2d 225 (1959); Bush v. Bush, 158 Kan. 760, 150 P.2d 168 (1944); State ex rel. Hedrick v. Hartford Accident & Indemnity Co., 154 Kan. 79, 114 P.2d 812, 815 (1941); Victory Life Ins. Co. v. Freeman, 145 Kan. 296, 65 P.2d 559 (1937). It is not the function of an order nunc pro tunc to alter the judgment actually rendered. Its purpose is to merely correct the record of the judgment. Bush v. Bush, *supra*. A court does not have the power to modify an original judgment under the guise of an order nunc pro tunc. State ex rel. Hedrick v. Hartford Accident & Indemnity Co., *supra*; Hinshaw v. Hinshaw, 166 Kan. 481, 203 P.2d 201 (1949).

We find no support in the record for the district court's determination that the annulment decree was merely clarified by the nunc pro tunc orders to show that the common-law marriage was annulled. Neither the pleadings nor the record in the annulment proceedings support this interpretation. To the contrary, the record establishes that the claimant sought to annul the common-law marriage in the annulment case, only after benefits were denied her on the basis of that common-law marriage. The orders recite that they were for the purpose of clarifying the record "for the Social Security Department." The June 21, 1968 order which purports to destroy the common-law marriage amounts to a judgment foreign to the issues in the annulment action.

Apparently the Secretary in his final determination of the claimant's right to benefits chose to accept the last nunc pro tunc order as a dissolution of the common-law marriage, but held that the marriage was valid until declared void, citing Johnson County National Bank and Trust Co. v. Bach, 189 Kan. 291, 369 P.2d 231 (1962). Cairns' right to benefits after the date of that order is not questioned here. Claimant recognizes that the dissolution of a voidable marriage is effective only as of the date of dissolution, but argues that the common-law marriage is also absolutely void in all its aspects because in some way it springs from the prior bigamous ceremonial marriage. This argument overlooks the clear Kansas law that after the removal of the bigamous feature a valid common-law marriage was created when the parties continued to live together as husband and wife. This relationship could be dissolved only by divorce or other proceedings brought for that purpose.

The status of the claimant as a widow entitling her to Social Security benefits is to be determined by the state law. 42 U.S.C. § 416(h) (1) (A). For the reasons stated, we are satisfied that the Supreme Court of Kansas would not, under the circumstances here, hold that the nunc pro tunc orders entered in the annulment suit would effectively and retroactively dissolve the common-law marriage and that the Secretary was not required to accept the orders as the law

of Kansas. Legory v. Finch, 424 F.2d 406 (3d Cir. 1970); Cain v. Secretary of Health, Education and Welfare, 377 F.2d 55 (4th Cir. 1967).

Reversed and remanded with instructions to affirm the Secretary's order.