**Donald WEIL, General Partner, TMG, II, a New York Limited Partnership, Appellant,**

v.

**Edward A. MARKOWITZ, et al.**

No. 88-5289.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1989.

Decided March 16, 1990.

---

Marvin L. Syzmkowicz, with whom Allan I. Mendelsohn was on the brief for appellant.

Joan I. Oppenheimer, Attorney, Dept. of Justice, of the bar of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, pro hac vice, by special leave of Court, with whom Jay B. Stephens, U.S. Atty., Shirley D. Peterson, Assistant U.S. Atty., and Gary R. Allen, Attorney, Dept. of Justice, were on the brief for appellees. William S. Rose, Atty., Dept. of Justice, also entered an appearance.

Before EDWARDS, BUCKLEY and D. H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D. H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Before us for the second time is the settlement between TMG II, a limited partnership the sole remaining general partner of which is appellant Donald Weil, and appellee Edward Markowitz, a former general partner of TMG II. The background of this dispute is more fully described in our earlier decision, *Weil v. Markowitz*, 829 F.2d 166, 167–70 (D.C.Cir.1987) (*Weil I*), in which we remanded to the district court "the question of whether the settlement order should be entered *nunc pro tunc*." We recount here only what is necessary in order to explain our affirmance of the district court's decision answering that question in the negative.

## I. BACKGROUND

In *Weil I*, we affirmed the district court's decision approving the settlement agreement. We declined, however, to address the merits of Weil's claim that the district court had earlier "erred in granting the government's motion to stay [civil discovery] proceedings [in] apparent reliance on *ex parte* materials" relating to a criminal investigation into the same parties and affairs that were involved in this litigation. According to Weil, "the *ex parte* materials and the stays had significant and deleterious effects, because they resulted in a one year delay of trial that permitted the IRS to file tax liens against Markowitz [*et al.*] before appellants could secure a final decree and enforce a judgment lien against them." *Id.* at 174. We found that it was unnecessary, however, to "attempt to unravel the complex web of facts concerning the propriety of the stays and *ex parte* communications when the only real relief available to the appellants is *nunc pro tunc* entry of the settlement order." *Id.* at 174 n. 17.

With respect to that relief, we noted that "the principle underlying entry of a judgment or an order *nunc pro tunc* is that of fairness to the parties," and we adduced two considerations that might make such relief appropriate in this case. *Id.* at 174–75. First, because the Government had been granted *nunc pro tunc* relief in a

related proceeding (rescinding its intervention as of the date it had been granted), we thought that in fairness "an opportunity for similar relief" should be available to Weil. Second, because "the government's intervention was intended to protect a criminal investigation[, we found it] unclear why the District Court's acquiescence for this narrow purpose should confer an advantage to the government in enforcing its civil tax lien." *Id.* at 175.

We declined to resolve the issue of whether to grant *nunc pro tunc* relief, however, because we were concerned that the Government, "which stands to lose its tax lien priority if judgment is entered *nunc pro tunc* [and is therefore] the real party in interest, ... [was] not a party to [that] appeal and therefore [could not] defend its interests." The determination of what "justice may require" must rest upon a "proper factual basis," but that could not be assured "without the participation of the real party in interest." *Id.*

On remand, immediately after hearing the parties' arguments but without conducting an evidentiary hearing, the district court delivered a bench opinion denying appellant *nunc pro tunc* relief. The court stated:

[T]he plaintiff has failed to prove by a preponderance of the evidence ... that there is a causal connection between the four-month stay and the priority which the Government now has for its lien.... [I]f the case had been settled in October, as [appellant] hypothesized, and there had been a controversy about it thereafter, as the Government hypothesized, ... the judgment on the settlement would not have been enterable[ ] until after the Government lien had attached.

I am further persuaded by the arguments of both parties ... that the imminence of the trial date and/or the entry of settlement would have concentrated the Government's mind to where it would have effected its assessment and accompanying lien before the judgment was entered.

On this appeal, Weil contends as an initial matter that the district court should have found that, because the Government declined to participate in the earlier appeal to this court, it is estopped from challenging TMG II's right to *nunc pro tunc* relief. On the merits, Weil argues that the district court erroneously applied a "technical, tort-type standard of proximate cause" that in effect required him to prove that, if the court had not stayed the civil proceedings, TMG II would have filed its lien before the Government filed its tax lien. Instead, Weil suggests the district court should have considered a number of "equitable factors" in order to arrive at a "just" solution, which would of course mean granting him relief *nunc pro tunc.* Weil asks this court not only to order the entry of such relief, but also "to clarify and restate the law in favor of communications on the record and against *ex parte* contacts."

## II. ANALYSIS

█ We need not address at any length Weil's initial argument that the Government is estopped by its prior nonparticipation from disputing the priority of TMG II's judgment. Our earlier opinion clearly indicates that we intended that the Government have an opportunity to address whether the court should grant *nunc pro tunc* relief; that is the law of the case, and it precludes the present argument for estoppel.

█ With respect to the principal issue before us, we hold that the district court did not err in concluding that Weil has failed to demonstrate that the stay resulted in the Government's lien gaining priority; nor did it abuse its discretion, therefore, in determining that *nunc pro tunc* relief would not serve the interests of justice. Consequently, we affirm the decision of the district court without need to address the other issues that the parties have raised.

In our earlier opinion, we stated that the issue of whether to grant *nunc pro tunc* relief is "best left to the discretion of the District Court." *Id.* As that court correctly understood, our explanation that *nunc pro tunc* relief is available in order to promote "fairness to the parties," and " 'as justice may require,' " *id.* (quoting *Mitchell*

*v. Overman,* 103 U.S. (13 Otto) 62, 65, 26 L.Ed. 369 (1881)), neither directed nor authorized it to engage in a boundless consideration of "equitable factors."

*Nunc pro tunc* relief has been granted only in a limited number of circumstances, where its entry is necessary to avoid, and does not create, an injustice at the hands of the court itself. The paradigm case involves a party who has died after his case has been submitted to the court, but before the court has entered judgment. *See, e.g., Mitchell,* 103 U.S. at 65 (affirming state court's entry of judgment for deceased plaintiff as of time case was submitted, in order "to see that the parties shall not suffer by the [court's] delay" in deciding case). Cases in which a party would otherwise be prejudiced by the clerk's delay in entering the judgment stand upon the same footing. *See, e.g., United States v. Chicago & A.R. Co.,* 250 F. 101, 102 (7th Cir. 1918). *Nunc pro tunc* relief may also be available, in some jurisdictions, "under extraordinary circumstances where [it] will not prejudice any party" and is necessary in the interests of justice. *In re Auto-Train Corp.,* 810 F.2d 270, 275 (D.C.Cir. 1987) (dictum); *see In re Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983).

Consistent with this limited availability of *nunc pro tunc* relief, our sole concern in *Weil I* was that it might be unreasonable for the Government to gain priority for its lien by virtue of having secured, in the civil proceedings between TMG II and Weil, a stay that was justified upon other grounds, *viz.* the protection of its on-going criminal investigation. This court was agnostic on the question of whether *nunc pro tunc* relief would, even in principle, be an appropriate means by which to prevent the Government from gaining such an advantage; because the Government was not a party to the prior appeal, that issue simply was not joined and thus was not decided.

In any event, it is equally clear that it would be inappropriate for the Government, because of its intervention, to lose a priority it would otherwise have had. In other words, if TMG II's claim would not have had priority over that of the Govern-

ment absent a stay, there is no reason why it should have priority merely because the Government obtained a stay. Therefore, although Weil is correct that we instructed the district court to consider what "justice may require," the district court is equally correct in concluding that justice here requires, at most, only that Weil neither be hurt nor helped by the stay.

It follows that the district court, contrary to Weil's argument for a more expansive consideration of various "equitable factors," correctly declined to consider such matters as TMG II's assistance to the Government during its investigation and the Government's alleged misconduct in obtaining the stay upon the basis of an *ex parte* submission to the court. Neither of these issues is relevant to the question of whether the stay enabled the Government to gain temporal priority for its tax lien. As we have said, we "need not attempt to unravel the complex web of facts concerning the propriety of the stays and *ex parte* communications when the only real relief available to the appellants is *nunc pro tunc* entry of the settlement order." 829 F.2d at 174 n. 17. Similarly irrelevant is appellant's assertion that the *ex parte* contacts prejudiced the district judge against him, a broadside that lacks any factual support.

Contrary to appellant's assertion, the district court did not require him to show beyond "every last doubt, uncertainty and ambiguity" that, but for the stay, his lien would have had priority over that of the Government. Instead, the court found that appellant did not make such a showing "by a preponderance of the evidence," based upon two factors. First, Weil proffered insufficient reason to believe that if the original trial schedule had been followed, the problems and delays that actually arose once the stay expired and the litigation was resumed would not still have arisen and thus caused the judgment in his favor to be entered after the Government's lien had attached. Second, the Government was aware of what was going on in the civil case and, had there never been a stay of the proceedings, it would surely have secured its lien earlier, as it could easily have

done, in order to achieve priority over the judgment.

We find the first of these reasons persuasive, and the second conclusive. Before the Government obtained the stay, which was entered on May 7, 1984, the court had scheduled the trial to begin on October 22 and expected it to last five days. It is possible that, held to this schedule, the trial would have settled the dispute in October. On the other hand, since the parties ultimately settled, absent some change in the pressures impelling settlement on one side or the other had there never been a stay, we have to believe they would likewise have settled without going to trial in late October. Under the terms of the settlement they in fact later reached, however, judgment would still not have been entered by the court until considerably later. That settlement, submitted for court approval in late April 1985, called for its circulation to each of the limited partners for an opportunity to object, which procedure consumed additional months as the objections were entertained. Whether this process would have been completed, absent the stay, prior to the date on which the Government actually filed its tax lien (January 14, 1985) is anybody's guess.

Weil argues, however, that the stay did in fact alter the dynamics of settlement. Weil asserts that the stay prevented the discovery in May 1984 of certain documents from Markowitz's attorney. These documents were, according to Weil, so damaging to Markowitz that their disclosure would have forced an earlier settlement (and one more favorable to Weil). The effect of earlier disclosure of these documents is, however, entirely speculative: we do not know whether Markowitz would have settled earlier if they had been released, and Weil does not even suggest that the hypothetical settlement more favorable to him would not still have had to be submitted to the limited partners. We are unwilling to overturn the district court's finding based upon speculation that treats as probable what can at best be deemed possible.

Weil also maintains that the time it took to settle the case after expiration of the stay is not indicative of the time that would have been required but for the stay because the stay eliminated the October deadline ("discovery, like work, expands to the time allotted to fill it"), and propelled the case into a period when it competed for attention with collateral matters, such as the winding up of one of the corporate defendants. These observations are not without their force, but it is the force exerted by a proposition that cannot be denied, not one that must be admitted. The overwhelming fact is that the stay was in force only from May 7 until September 14, just over four months, whereas the district court entered the settlement on August 30, 1985, almost one full year after the stay had expired (and more than seven months after the Government filed its tax lien). We do not think it the more likely that, but for the stay, entry of a settlement would have come between May and October when in fact, once the clock started to run again with the expiration of the stay, it took the parties a year to accomplish that result.

The district court's second basis for denying *nunc pro tunc* relief is even less susceptible to objection on the basis of such speculations. The court noted that the Government was clearly aware of the course of events in the action between TMG II and Markowitz and of the impact that a settlement would have upon its own claim against Markowitz. If there had been no stay, then when word of an impending settlement reached the Government, or the parties proposed an actual settlement for the court's approval, during the pretrial period from May to October 1984, the Government certainly would have entered its lien at that time. In the event, the Government waited until January 1985 to file its lien, but until that time, it knew that there was no danger of its losing priority to a judgment lien; in fact, there were not even any settlement negotiations between TMG II and Markowitz until February 1985, some five months after expiration of the stay.

The district court thus reasonably concluded that Weil has failed to demonstrate

that, but for the stay, TMG II's claim against Markowitz would have had priority over that of the Government.

### III. CONCLUSION

The district court's holding rests upon the factual determination, for which there is ample support, that TMG II would not have secured its lien first even if the Government had never obtained a stay. The interests of justice would not be served, therefore, by the entry of Weil's judgment *nunc pro tunc.* Accordingly, the decision of the district court is

*Affirmed.*