**Carlton F. SEYMOUR, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 00–7074.**

United States Court of Appeals, Federal Circuit.

April 12, 2001.

Thomas J. Reed, Widener University School of Law, Delaware Volunteer Legal Services, Inc., Veterans Assistance Program, of Wilmington, DE, argued for claimant-appellant.

Brian S. Smith, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David M. Cohen, Director; and Harold D. Lester, Jr., Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and Michelle Doses Bernstein, Attorney, Department of Veterans Affairs, of Washington, DC.

Before RADER, SCHALL, and DYK, Circuit Judges.

## DECISION

DYK, Circuit Judge.

This case presents the question whether a veteran's disability claim under 38 U.S.C. § 1151 survives the veteran's death. We hold that it does not and therefore that the Court of Appeals for Veterans Claims properly dismissed this appeal for lack of jurisdiction.

## I

Carlton F. Seymour enlisted in the United States Army in July 1948. On December 2, 1950, he was wounded in the right thigh by North Korean machine gun fire. On December 12, 1952, Mr. Seymour was awarded an 80 percent combined disability rating as a result of this wound. Mr. Seymour became disabled and unable to work in 1979, and he was awarded a 90 percent combined disability rating in 1981.

In August 1984, Mr. Seymour underwent surgery at a VA hospital to relieve pain in his right toes. During routine blood work associated with this surgery, the laboratory reported an elevated platelet count. Between 1984 and 1989, VA physicians did not diagnose or treat Mr. Seymour for this condition. In 1989, Mr. Seymour's blood condition was diagnosed as myeloproliferative disorder, a disease involving excess production of certain kinds of blood cells (platelets, in Mr. Seymour's case).

In May 1990, Mr. Seymour initiated a claim for disability under 38 U.S.C. § 1151 for failure to diagnose, treat, and warn him of myeloproliferative disorder. He argued that but for the failure of VA physicians to timely diagnose or treat him for the myeloproliferative disorder, he would not have developed, or he would have developed with lesser severity, a myocardial infarc-tion, hearing loss, and his myeloprolifera-tive disorder.

Mr. Seymour's pursuit of his section 1151 claim proved to be a decade-long endeavor that ended only with his death. Although the circuitous course of these proceedings has little bearing on the outcome of this case, we nevertheless briefly outline them here. The VA Regional Office denied Mr. Seymour's claim on August 17, 1990. Mr. Seymour appealed to the Board of Veterans' Appeals ("Board"). The Board instituted a stay on all section 1151 claims from February 1992, through January 1995, during which this court and the Supreme Court upheld the Court of Appeals for Veterans Claims' ruling that section 1151 included no requirement of governmental negligence, despite a sixty-year-old agency regulation to the contrary. See Gardner v. Brown, 5 F.3d 1456 (Fed. Cir.1993), aff'd, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Subsequently, on remand from the Board, the VA Regional Office again denied Mr. Seymour's claim for compensation. Mr. Seymour appealed again, and the Board for the second time remanded the case to the Regional Office. The Regional Office then rejected Mr. Seymour's claim for the third time. The Board affirmed on April 20, 1998, ruling that Mr. Seymour had not shown by competent evidence that he had suffered any additional disability resulting from VA treatment between 1984 and 1989. Mr. Seymour filed a timely notice of appeal to the Court of Appeals for Veterans Claims.

Mr. Seymour died on July 16, 1999, during the pendency of his appeal to the Court of Appeals for Veterans Claims. Constance A. Seymour, Mr. Seymour's surviving spouse, moved to be substituted as the party appellant. The Court of Appeals for Veterans Claims, citing Landicho v. Brown, 7 Vet.App. 42 (1994), held that Mr. Seymour's claim for disability compen-

sation did not survive his death. It vacated the Board's April 1998 decision and dismissed Mr. Seymour's appeal for lack of jurisdiction. Mrs. Seymour appealed to this court.

## II

■ The question of whether a veteran's disability claim under 38 U.S.C. § 1151 survives the veteran's death is a question of statutory interpretation, over which this court has jurisdiction under 38 U.S.C. § 7292(c). We review without deference the statutory interpretation of the Court of Appeals for Veterans Claims. *See Richard v. West,* 161 F.3d 719, 721 (Fed.Cir.1998).

■ Section 1151 is found in chapter 11 of Title 38 of the United States Code, which provides disability benefits for qualifying veterans and death benefits for qualifying survivors. This court has not previously addressed whether a disability claim under 38 U.S.C. § 1151 survives the death of a veteran. However, it has previously determined that disability claims under other provisions of chapter 11 do not survive a veteran's death. *See Richard v. West,* 161 F.3d 719, 720 (Fed.Cir.1998) (seeking compensation for service-connected disability under 38 U.S.C. § 1110); *Haines v. West,* 154 F.3d 1298, 1302 (Fed. Cir.1998) (seeking to pursue claim under 38 U.S.C. § 5109A); *Zevalkink v. Brown,* 102 F.3d 1236, 1243 (Fed.Cir.1996) (seeking compensation under 38 U.S.C. § 1110). These decisions are based on this court's determination that "the clear intent expressed by the structure and language of the statutory scheme ... [is] that a veteran's claim to disability benefits terminates at death." *Richard,* 161 F.3d at 722.

■ In our previous decisions holding that disability claims do not survive a veteran's death, we explained that under chapter 11's statutory scheme, disability compensation is generally payable only to veterans, while death benefits are payable to survivors. *See Richard,* 161 F.3d at 722; *Haines,* 154 F.3d at 1300. Death benefits for service-connected post 1956 deaths are payable to survivors under 38 U.S.C. § 1310. In contrast, a veteran's entitlement to disability payments ends on the last day of the month before the veteran's death. *See* 38 U.S.C. § 5112(b)(1). The statute does allow certain survivors to seek payment of accrued benefits owed to a veteran at the time of the veteran's death. *See* 38 U.S.C. § 5121. However, the scope of this accrued-benefits provision is limited: it applies only to benefits "due and unpaid" at the time of the veteran's death, and benefits are limited to "a period not to exceed two years" prior to the veteran's death. *Id.* Moreover, a claim for accrued benefits under section 5121 is separate from a veteran's claim for disability payments "because it is based on a separate statutory entitlement for which an application must be filed to receive benefits." *Zevalkink,* 102 F.3d at 1241. We have previously held in the context of service-connected disability claims that the result of this statutory scheme is that "survivors may not pursue disability compensation claims of a veteran, even as heirs to the veteran's estate." *Haines,* 154 F.3d at 1300.

## III

We turn now to section 1151 itself. Mrs. Seymour argues that the principles of *Richard, Haines,* and *Zevalkink* are not applicable to claims arising under section 1151. We begin our analysis with the language of the statute. Section 1151 provides, in relevant part:

Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, ... and such injury or aggravation results in additional

disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death were service connected.

38 U.S.C. § 1151 (1994).[1]

The plain language of section 1151 forecloses Mrs. Seymour's claim that Mr. Seymour's action survives his death. While the appellant urges that "claims under section 1151 are not based on service connection ... [and should not] be precluded," Congress has specifically provided that disability compensation under section 1151 is "awarded in the same manner as if such disability ... were service connected." Service-connected disability compensation is awarded under section 1110, and we have previously determined that a veteran's claim under section 1110 is extinguished by the death of the veteran. *See Richard*, 161 F.3d at 723. Therefore, it follows directly from the language of section 1151 that a claim for disability under section 1151 is extinguished by a veteran's death.

In contrast to a veteran's disability claim, a death benefit claim under section 1151 is not extinguished by a veteran's death. Sections 1310 (for post–1956 deaths) and 1141 (for pre–1957 deaths) make clear that a death benefit claim for a service-connected death is never a claim by the veteran, but rather a claim by the survivors. Thus, there is no anomaly in recognizing the continued existence of the death benefit claim under section 1151 while extinguishing the veteran's disability claim.

In an attempt to distinguish claims under section 1151 from other claims under chapter 11, the appellant asserts that section 1151 is historically linked to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). In a suit under the Federal Tort Claims Act, Mr. Seymour's pending action would not have lapsed at his death, and Mrs. Seymour would have been substituted in his place. *See Richards v. United States*, 176 F.3d 652, 657 (3rd Cir.1999). According to Mrs. Seymour, she should therefore be allowed to continue Mr. Seymour's action under section 1151.

We find nothing in the language or history of section 1151 which links it to the Federal Tort Claims Act in such a manner as to allow a veteran's disability claim to survive the veteran's death. As an initial matter, section 1151 dates back to 1924, *see Gardner v. Brown*, 5 F.3d at 1460, while the Federal Tort Claims Act was initially enacted in 1946. *See* 60 Stat. 842–47 (1946). This disparity does not suggest a close linkage between the two statutes. Moreover, there is a substantial distinction in the scope of coverage between the two statutes: the Federal Tort Claims Act requires a showing of governmental negligence, while section 1151 does not, even after the 1996 amendment. *See* n. 1 *supra.* Given the differences in scope and purpose between the two statutory schemes, we reject Mrs. Seymour's assertion that it is "inconsistent and unthinkable" that section 1151 does not allow substitution to the same extent as the Federal Tort Claims Act. In addition, we note that the Supreme Court has held that receipt of

---

1. In 1996, Congress amended § 1151 to specify that, except in circumstances not relevant here, compensation would be awarded only if the proximate cause of the disability or death was departmental negligence or an event not reasonably foreseeable. *See* 38 U.S.C .A. § 1151(a) (West Supp.2000). The Board did not apply this amendment retroactively to Mr. Seymour's claim. The government apparently agrees that this amendment should not have retroactive effect, and the amendment does not in any event affect the outcome of this case.

disability compensation under title 38 does not preclude recovery under the Federal Tort Claims Act. *See United States v. Brown,* 348 U.S. 110, 113, 75 S.Ct. 141, 99 L.Ed. 139 (1954). Thus, a veteran who pursues a claim under section 1151 need not give up any potential benefits from also pursuing a claim under the Federal Tort Claims Act. Instead, recovery under section 1151 would only reduce the amount of judgment under the Federal Tort Claims Act.

Finally, the appellant points out that the United States Court of Appeals for the Second Circuit appears to have adopted a different construction of the predecessor version of section 1151 in *Devany v. United States,* 366 F.2d 807 (2d Cir.1966). The Second Circuit's statements in that case regarding substitution, however, are dicta, for the court dismissed the veteran's appeal for failure to exhaust administrative remedies. Furthermore, *Devany* was decided without the benefit of our decisions in *Richards, Haines,* and *Zevalkink,* and in any event recognized that the recovery by the veteran's widow would be limited to the accrued benefits specified in what is now 38 U.S.C. § 5121.

### IV

We thus find no basis for distinguishing this case from *Richards,* and we conclude that Mrs. Seymour has no right to be substituted for Mr. Seymour in this action. This determination does not imply that Mrs. Seymour has no basis to seek compensation on her own behalf. Mrs. Seymour is entitled to pursue her previously-filed claim for accrued benefits under section 5121, and she may also seek dependency and indemnity compensation under chapter 13.

As we noted in *Richard,* the Court of Appeals for Veterans Claims "does not decide cases that do not present an actual case or controversy." *Richard,* 161 F.3d at 721. Because Mr. Seymour's claim was extinguished by his death, there is no case or controversy over which the Court of Appeals for Veterans Claims may exercise jurisdiction. *See id.* Under these circumstances, the Court of Appeals for Veterans Claims acted properly in vacating the Board's April 1998 decision and dismissing this appeal for lack of jurisdiction. *See Landicho,* 7 Vet.App. at 54–55. Accordingly, the Court of Appeals for Veterans Claims' dismissal of Mr. Seymour's claim is affirmed.

### COSTS

No costs.