# United States Court of Appeals for the Federal Circuit

2006-7037

BARNEY O. PADGETT,

Claimant,

and

SUE PADGETT,

Movant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Donald H. Smith, Sidley Austin LLP, of Washington, DC, argued for movant-appellant. With him on the brief was Barton F. Stichman, National Veterans Legal Services Program, of Washington, DC.

Martin F. Hockey, Jr., Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director. Of counsel on the brief were Michael J. Timinski, Assistant General Counsel and Martin J. Sendek, Staff Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

2006-7037

BARNEY O. PADGETT,

Claimant,

and

SUE PADGETT,

Movant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  January 5, 2007

_____

Before NEWMAN, MAYER, and LINN, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> MAYER.  Dissenting opinion filed by <u>Circuit Judge</u> LINN.

MAYER, <u>Circuit Judge</u>.

Barney O. Padgett ("Padgett") is a World War II veteran who died after his appeal of the Board of Veterans' Appeals' denial of his claim for service-connected disability benefits was submitted for decision to the United States Court of Appeals for Veterans Claims, but before the opinion issued.  Sue Padgett ("Mrs. Padgett"), his widow,

appeals the judgment of the Veterans Court, which withdrew its opinion, and denied her motion to be substituted on her husband's appeal. Padgett v. Nicholson, 19 Vet. App. 334 (2005) ("Withdrawal Order"). Because the Veterans Court erred in concluding that it was obligated to withdraw its opinion, and that Mrs. Padgett could not be substituted on Padgett's appeal, we reverse and remand.

## Background

Padgett was a World War II veteran who served in Europe, Africa, and the Middle East. In March 1993, he filed a claim for service-connected disability benefits based on a right-hip disorder. The regional office ("RO") denied his claim in 1995, and he appealed to the board. In 1997, it remanded his case for reconsideration of both direct and secondary service connection. After further adjudication before the RO, in August 2002, the board denied the claim. Padgett appealed to the Veterans Court, and in a July 9, 2004, panel decision, it vacated the board's decision and remanded for readjudication of his claim. Both Padgett and the Department of Veterans Affairs ("DVA") petitioned for en banc review, which was granted on September 14, 2004. Padgett v. Principi, 18 Vet. App. 404 (2004) (en banc order).

The Veterans Court issued an en banc opinion on April 19, 2005, and entered judgment on May 12, 2005. Padgett v. Nicholson, 19 Vet. App. 84 (2005) ("En Banc Opinion"). With respect to secondary service connection, the court found that "[t]he only plausible resolution of the key factual issue on the record in this case is that Mr. Padgett's right-hip disability was aggravated by his service-connected left-knee disability, and the Board's decision that the evidence preponderated against this claim must therefore be, and will be, reversed." En Banc Opinion, slip op. at 22. Having

resolved this issue in Padgett's favor, it remanded the secondary service connection claim for assignment of a disability rating and an effective date. With respect to direct service connection, the court found that the record was silent as to the medical nexus between Padgett's complained of right-hip disability and the incurrence of his right-hip injury during service. It vacated the decision of the board on that issue, and remanded for readjudication and further development, as necessary.

On April 20, 2005, the day after the Veterans Court's decision issued, Padgett's attorney learned that he had died in November 2004, and immediately notified the court. On May 19, 2005, the Secretary filed a motion to recall the April 19, 2005, en banc opinion, and dismiss Padgett's case as moot. Mrs. Padgett opposed the motion, and requested that she be substituted for Padgett on the appeal. Because she has a claim for her husband's accrued-benefits under 38 U.S.C. § 5121(a), substitution would protect her own interests under section 5121 and would avoid relitigation of the same issues that will be dispositive of her claim. In a September 7, 2005, order, the Veterans Court (1) withdrew its April 19, 2005, opinion; (2) dismissed Padgett's appeal as moot; (3) vacated the underlying board decision; and (4) denied Mrs. Padgett's motion to be substituted. Withdrawal Order, 19 Vet. App. at 336. She appeals, and we have jurisdiction under 38 U.S.C. § 7292(a).

### Discussion

Our review is limited to questions of law, 38 U.S.C. § 7292(d), and it is de novo, see 38 U.S.C. § 7292(a); see also Bailey v. West, 160 F.3d 1360, 1362 (Fed. Cir. 1998) (en banc). This case presents two such questions. First, where a veteran dies after his case is submitted for decision, but before the opinion issues, does the Veterans Court

have authority to issue the judgment <u>nunc pro tunc</u> as of the time of his death?  Second, and intertwined with the first, is whether, under these circumstances, the surviving spouse, as accrued-benefits claimant, may be substituted on her husband's appeal?  We answer both questions in the affirmative.

Where a party dies after his case is submitted, but before the opinion issues, and the case would otherwise be rendered moot, the Supreme Court has consistently entered judgment <u>nunc pro tunc</u> to the date of the party's death.  <u>E.g.</u>, <u>Harris v. Comm'r.</u> 340 U.S. 106, 113 (1950); <u>McDonald v. Maxwell</u>, 274 U.S. 91, 99 (1927); <u>Quon Quon Poy v. Johnson</u>, 273 U.S. 352, 359 (1927); <u>Bell v. Bell</u>, 181 U.S. 175, 179 (1901); <u>Mitchell v. Overman</u>, 103 U.S. 62, 64-66 (1880).  As explained in <u>Mitchell</u>, 103 U.S. at 64-65, "the rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up."  The Court further explained, "In such cases, . . . it is the duty of the court to see that the parties shall not suffer by the delay.  A <u>nunc pro tunc</u> order should be granted or refused, as justice may require in view of the circumstances of the particular case."  <u>Id.</u> at 65.  This rule of practice applies "both in courts of law and of equity."  <u>Id.</u> at 65-66.

At least two circuit courts have stated that all courts have the authority to enter judgments and rulings on a <u>nunc pro tunc</u> basis.  <u>See</u> <u>Cairns v. Richardson</u>, 457 F.2d 1145, 1149 (10th Cir. 1972) ("All courts have the inherent power to enter orders nunc

pro tunc . . . ."); <u>Matthies v. R.R. Ret. Bd.</u>, 341 F.2d 243, 248 (8th Cir. 1965) (same). Moreover, as the D.C. Circuit has explained: "The paradigm case involves a party who has died after his case has been submitted to the court, but before the court has entered judgment." <u>Weil v. Markowitz</u>, 898 F.2d 198, 201 (D.C. Cir. 1990) (citing <u>Mitchell</u>, 103 U.S. at 65). This, however, does not end the inquiry into whether the Veterans Court may act <u>nunc pro tunc</u>, because the Supreme Court and the circuit court cases cited above speak only to the powers of Article III courts; the Veterans Court is an Article I court.

It is well recognized, however, that Article I courts may provide <u>nunc pro tunc</u> relief. For example, the Court of Federal Claims has so held. <u>See, e.g.</u>, <u>Holloway v. United States</u>, 60 Fed. Cl. 254, 264 (2004) ("It is beyond cavil that a court may enter an order <u>nunc pro tunc</u> 'to make the record speak the truth . . . .'") (quoting <u>Matos v. Sec'y of Dep't of Health and Human Servs.</u>, 35 F.3d 1549, 1552 (Fed. Cir. 1994)). Article I bankruptcy courts may also provide <u>nunc pro tunc</u> relief. <u>See, e.g.</u>, <u>Lavender v. Wood Law Firm</u>, 785 F.2d 247, 248 (8th Cir. 1986) ("[T]he bankruptcy court as a matter of fundamental fairness may exercise its discretion and enter a nunc pro tunc order . . . ."); <u>In re Triangle Chems., Inc.</u>, 697 F.2d 1280, 1289 (5th Cir. 1983) (same); <u>see also</u> <u>Cont'l Cas. Co. v. Gen. Dev. Corp. (In re Gen. Dev. Corp.)</u>, 165 B.R. 685, 689 (D. Fla. 1994) ("It is well settled that courts, including bankruptcy courts, have the discretion to enter orders on a <u>nunc pro tunc</u> basis."). We are not aware of any conclusion to the contrary.

Relatedly, we have recognized the authority of the Patent Office Board of Appeals to provide <u>nunc pro tunc</u> relief. <u>See</u> <u>In re Grier</u>, 342 F.2d 120 (CCPA 1965). In addition, the D.C. Circuit has ordered various federal agencies to provide <u>nunc pro tunc</u>

relief. See, e.g., Ethyl Corp. v. Browner, 67 F.3d 941, 945 (D.C. Cir. 1995) (EPA); Off. of Consumers' Couns. v. FERC, 826 F.2d 1136, 1139 (D.C. Cir. 1987); Salzer v. FCC, 778 F.2d 869, 875-76 (D.C. Cir. 1985); Delta Data Sys. Corp. v. Webster, 744 F.2d 197, 206-07 (D.C. Cir. 1984) (Scalia, J.) (FBI).

In enacting the Veterans' Judicial Review Act of 1988 (codified as amended at 38 U.S.C. §§ 7251-7298 (2000)), "Congress legislate[d] against a common law background." Lofton v. West, 198 F.3d 846, 850 (Fed. Cir. 1999). It would be incongruous if the authority to provide nunc pro tunc relief were not available to the Veterans Court. This is especially so in view of the purpose of the veterans' benefits scheme and the Veterans Court's role within it, see Bailey, 160 F.3d at 1370 (Michel, J., concurring) ("[T]he Court of Veterans Appeals . . . is an Article I court set in a sui generis adjudicative scheme for awarding benefit entitlements to a special class of citizens, those who risked harm to serve and defend their country. This entire scheme is imbued with special beneficence from a grateful sovereign."); see also 38 C.F.R. § 3.103(a) ("[I]t is the obligation of VA . . . to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government."), and the canon that veterans' benefits statutes are to be construed in the veteran's favor, see King v. St. Vincent's Hosp., 502 U.S. 215, 220 n.9 (1991) (citing Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285 (1946)).

The next question is whether nunc pro tunc relief is appropriate in this case. To answer, we must decide whether entering Padgett's judgment nunc pro tunc would be inconsistent with the applicable benefits statutes and the statutes governing the Veterans Court's standing and jurisdiction. Under 38 U.S.C. § 5121(a), a surviving

spouse may receive the "benefits . . . to which [the veteran] was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death . . . and due and unpaid . . . ." This requires that "the veteran must have had a claim [for benefits] pending at the time of his death . . . or else be entitled to them under an existing rating or decision." Jones v. West, 136 F.3d 1296, 1299 (Fed. Cir. 1998). Accordingly, an accrued-benefits claim "incorporates any prior adjudications of the service-connection issue on claims brought by the veteran, because it derives from the veteran's service-connection claim." Smith v. Brown, 10 Vet. App. 330, 334 (1997) (citing Martin (Mary Ann) v. Brown, 7 Vet. App. 196, 198-99 (1994); Zevalkink v. Brown, 6 Vet. App. 483, 492 (1994), aff'd, 102 F.3d 1236 (Fed. Cir. 1996)).

In Zevalkink v. Brown, 102 F.3d 1236, 1243-44 (Fed. Cir. 1996), we approved of the Veterans Court's practice of dismissing a veteran's claim for benefits as moot and vacating the underlying board decision, where the veteran died after filing a notice of appeal, but before his case was submitted for decision. As the Veterans Court explained, the board's denial was no longer a final adjudication. See Landicho v. Brown, 7 Vet. App. 42, 52 (1994). Because the appealed board decision "was in a state of nonfinality at the date of the veteran appellant's death, and because that decision could no longer serve any adjudicatory purpose since the veteran's claims had died with him, that decision was, therefore, rendered without force or effect by his death – meaning that it then became a nullity." Id. By vacating the board's decision, the "adjudication of any accrued-benefits claim . . . would pick up exactly where the veteran was in presenting [his] underlying claim immediately prior to his death . . . ." Id. at 53.

Here, however, we have precisely the opposite situation. The appealed board decision is in a state of finality not found in the cases where the veteran died prior to the submission of his case. E.g., Seymour v. Principi, 245 F.3d 1377 (Fed. Cir. 2001); Richard v. West, 161 F.3d 719 (Fed. Cir. 1998); Haines v. West, 154 F.3d 1298 (Fed. Cir. 1998); Zevalkink, 102 F.3d 1236. The Veterans Court's remand itself, in the En Banc Opinion, places Padgett's claim in a posture that is wholly analogous to Mrs. Padgett's claim. Giving effect to the judgment provided for in the En Banc Opinion is, therefore, consistent with DVA's practice in adjudicating accrued-benefits claims, that is, incorporation of any final adjudication of service-connected issues relating to claims brought by the veteran. See, e.g., Smith, 10 Vet. App. 330; Martin, 7 Vet. App. 196; Zevalkink, 6 Vet. App. 483. In fact, failure to give effect to the En Banc Opinion would be inconsistent with DVA's practice, because it would disregard the otherwise final determination of issues relating to the accrued-benefits claim.

We recognize that if the En Banc Opinion is reinstated the government might appeal to this court and to the Supreme Court. However, U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 26 (1994), makes clear that judicial precedents are "presumptively correct." Accordingly, it would be inappropriate for us to hesitate to consider the availability of nunc pro tunc relief based on the lesser possibility that some aspects of the Veterans Court's opinion might be adjusted upon further judicial review. More importantly, once the Veterans Court has rendered a decision, it is certain that there will be a final judgment of some kind relating to the underlying issues in the veteran's claim for benefits. It is those finally decided issues that Smith, 10 Vet. App. 330, says are to be taken into account when deciding an accrued-benefits claim. This

contrasts with the situation in Zevalkink, 102 F.3d at 1243-44, where there was no final agency adjudication. In our view, granting nunc pro tunc relief here is consistent with, if not compelled by, the statutory scheme for awarding benefits to veterans and their survivors.

We are left with only the issue of whether Mrs. Padgett should be substituted for Padgett on the appeal. Because of the general rule that a veteran's claim for benefits ends with his death, if Mrs. Padgett could not be substituted, nunc pro tunc relief would be inappropriate. Indeed, United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950), provides, "The established practice of the Court in dealing with a civil case . . . which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." In this manner, the reversal or vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." Id. at 40. Absent substitution, we would face the scenario contemplated by Munsingwear.

Substitution in veterans cases is a two-part inquiry. First, although not formally bound by Article III's "case or controversy" requirement, the Veterans Court, nevertheless, adheres to it, and does not decide hypothetical claims. See Zevalkink, 102 F.3d at 1243; Mokal v. Derwinski, 1 Vet. App. 12, 13 (1990). The continuing relevance and preclusive effect that the issues decided in Padgett's appeal have for her section 5121(a) claim are sufficient to meet the "case or controversy" requirement. See Haines, 154 F.3d at 1300 ("The accrued benefits provision thus creates a narrowly

limited exception to the general rule that a veteran's claim for benefits does not survive the veteran.") (citing Zevalkink, 102 F.3d at 1244).

Second, in order to be substituted, Mrs. Padgett must satisfy the Veterans Court's standing requirement under 38 U.S.C. § 7266(a), which provides that she be "adversely affected" by a decision of the board. In Zevalkink, 102 F.3d at 1243-44, the board's decision was vacated, and, therefore, could have no preclusive effect on the accrued-benefits claim. Accordingly, we found that the potential accrued-benefits claimant did not possess the requisite injury to support standing. Here, however, if nunc pro tunc relief is granted, the board's decision is still recognized and, but for the nunc pro tunc relief, would adversely affect her claim in the same way it adversely impacted Padgett's claim at the time he filed his notice of appeal. Contrary to the dissent's characterization of the issue, post at 3, it is this preclusive injury that gives her standing, not the delay inherent in proceeding under section 5121's procedures. Therefore, Mrs. Padgett has standing.

Finally, we consider whether or not this case satisfies the requirements of Mitchell, 103 U.S. at 64-66. The paramount considerations in this inquiry are justice and fairness to the parties. See id., 103 U.S. at 64-66; see also Weil, 898 F.2d at 200. It has now been more than thirteen years since her husband filed his claim, and given the backlog in the DVA, it could take several more years to resolve Mrs. Padgett's claim should the Veterans Court's vacatur stand. This is especially so given that the board denied Padgett's claim on the same record presented to the Veterans Court. It is reasonable to suspect that the RO and board would also reject Mrs. Padgett's claim absent the controlling effect of the En Banc Opinion.

Granting <u>nunc pro tunc</u> relief is consistent with DVA's practice of giving preclusive effect in an accrued-benefits claim to the issues decided in the veteran's claim for benefits, as discussed in <u>Smith</u>, 10 Vet. App. 330. It furthers judicial and administrative economy by not requiring relitigation and readjudication of issues already decided by the Veterans Court. And it furthers the government's interest under 38 C.F.R. § 3.103(a), "to render a decision which grants every benefit that can be supported in law."

Finally, we turn to the practical concerns raised by the government. It states that allowing <u>nunc pro tunc</u> entry of judgment "would be a disincentive for a deceased veteran's survivors to timely inform the court of a veteran's death in the hopes of obtaining from the Veterans Court a decision that would be favorable to a subsequent accrued benefits claim." We think it unlikely that parties would engage in such gamesmanship in matters of such gravity. Moreover, because <u>nunc pro tunc</u> relief is equitable in nature, if the Veterans Court suspects that parties are being less than forthright, it can factor that into its analysis. The government argues that <u>nunc pro tunc</u> relief may cause the court to issue advisory opinions or decide hypothetical cases. We disagree. If the court were not aware of any potential accrued-benefits claimants, or if all potential accrued-benefits claimants failed to qualify, the rule in <u>Munsingwear</u> would dictate. Lastly, it argues that such relief would disrupt the court's orderly transaction of business. To the contrary, when compared to DVA's burden in having to readjudicate issues already decided, and the court's burden in having to rehear issues in appeals that it already decided, <u>nunc pro tunc</u> orders actually provide positive judicial and administrative economies.

<u>Conclusion</u>

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is reversed, and the case is remanded for further proceedings in accordance with this opinion.

COSTS

Costs to appellant.

<u>REVERSED AND REMANDED</u>

# United States Court of Appeals for the Federal Circuit

2006-7037

BARNEY O. PADGETT,

Claimant,

and

SUE PADGETT,

Movant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

LINN, Circuit Judge, dissenting.

I respectfully dissent from the majority's decision to reverse the Veterans' Court's vacatur of its en banc opinion and denial of Mrs. Padgett's motion to be substituted for her husband in the appeal. Under the statutory scheme for accrued benefits, as interpreted by our precedent, I do not believe the Veterans' Court properly may enter a judgment on behalf of a deceased veteran nunc pro tunc to preserve the judgment's preclusive effects on the veteran's survivors, nor do I believe that the Veterans' Court is free to substitute a veteran's survivor in a pending administrative proceeding upon the veteran's death. Accordingly, I would affirm.

In Zevalkink v. Brown, 102 F.3d 1236, 1243–44 (Fed. Cir. 1996), we approached the foregoing questions and reached conclusions contrary to those of the majority as to each. The majority distinguishes Zevalkink by holding that "[t]he appealed board

decision is in a state of finality not found in the cases where the veteran died prior to the submission of his case." Ante at 8. In my opinion, this is not a meaningful distinction. The majority draws its analysis of finality from the Veterans' Court's decision in Landicho v. Brown, 7 Vet. App. 42, 52 (1994). See ante at 7. In Landicho, however, the court noted that the "appeal of a decision does suspend the finality of any judgment with respect to the parties to that case until the appeal is resolved." 7 Vet. App. at 52 (quoting Tobler v. Derwinski, 2 Vet. App. 8, 11 (1991)) (emphasis added). Whether the veteran dies before or after the case is submitted, the board's decision is rendered nonfinal by the appeal and is still not final at the time of the veteran's death. Any subsequent accrued-benefits action by the veteran's survivor must "tak[e] into account the effect of [the veteran's] having filed a[] [notice of appeal]." 7 Vet. App. at 52. With all due respect, I believe that the majority therefore begs the question when it holds that giving nunc pro tunc effect to the en banc opinion of the Veterans' Court is "consistent with DVA's practice in adjudicating accrued-benefits claims" because it incorporates the final adjudication of service-connectedness. Ante at 8. The en banc opinion is only a final adjudication if it is—contrary to Zevalkink—allowed to stand.

Likewise, I do not find persuasive the majority's conclusion that because "judicial precedents are 'presumptively correct,'" we can overlook the possibility that the government will have cause to appeal the Veterans' Court's decision. The majority cites U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18 (1994), a case that arose in an entirely different context—whether vacatur of a lower court's judgment was warranted when the parties settled after an appeal was filed but not decided. In U.S. Bancorp, the Supreme Court held that the "principal condition" to which a court should

look in determining whether vacatur is appropriate "is whether the party seeking relief from the judgment below caused the mootness by voluntary action." 513 U.S. at 24. Thus, the arguments against vacatur in U.S. Bancorp—and, by extension, the arguments in this case as to why entry of judgment nunc pro tunc is acceptable—do not apply where appellate "review . . . was prevented through happenstance." Id. at 22–23 (quoting United States v. Munsingwear, Inc., 340 U.S. 36, 40 (1950)).

Because of the need for meaningful appellate review of a judgment that is to be given preclusive effect, I believe that nunc pro tunc entry of the judgment is appropriate only if Mrs. Padgett can be substituted for her late husband in the appeal. That, too, appears to be precluded by Zevalkink. I agree with the majority that Mrs. Padgett has a sufficient interest in her husband's case to support Article III standing, see ante at 9–10, but that does not confer standing under the Veterans' Court's statutory standing provision, 38 U.S.C. § 7266(a). That statute requires that a party must be "adversely affected" by a decision of the Board in order to appeal to the Veterans' Court.

We observed in Zevalkink that "an accrued benefits claim is separate from the veteran's underlying claim for service connection and disability compensation." 102 F.3d at 1243. That separate claim has its own procedural requirements and its own procedures for administrative adjudication. Id. at 1243–44. Those procedures "ensure that [a survivor] will not suffer injury by the Court of Veterans Appeals' decision to deny substitution." Id. at 1244. Indeed, we held explicitly that "[a]ny delay inherent in pursuing [the survivor's] own claim, when this procedure is established by statute, does not constitute the kind of actual or threatened injury that confers standing." Id.

Moreover, delay is the only injury that Mrs. Padgett would suffer if the Veterans' Court's decision vacating its en banc opinion were allowed to stand. With respect, I believe that the majority misstates the procedural posture of this case when it argues that "but for the nunc pro tunc relief, [the board's decision] would adversely affect [Mrs. Padgett's] claim in the same way it adversely impacted [Mr.] Padgett's claim at the time he filed his notice of appeal." Ante at 10. Precisely to avoid such an eventuality, the Veterans' Court vacated not just its own en banc opinion, but also the underlying decision of the Board. Padgett v. Nicholson, 19 Vet. App. 334, 335 (2005) ("[T]he Court must vacate the underlying Board decision to prevent it from acting as a barrier to the success of any claimant seeking accrued benefits."); id. at 336 (ordering vacatur of the Board's decision). Thus, in this case as in Zevalkink, "the board's decision was vacated" and "could have no preclusive effect on the accrued-benefits claim" if we were to affirm. See ante at 10.

Mrs. Padgett's case is extremely sympathetic. Her husband's claim took so long to reach a favorable resolution—over twelve years—that he did not live to see it. Although the government at oral argument gave some reason to expect that it would not take nearly so long for Mrs. Padgett to reach the same resolution, I do not deny that any unnecessary delay seems unjust. However, as long as Zevalkink remains good law, or unless Congress reconsiders its decision to treat accrued-benefits claims by survivors separately from service-connectedness claims that do not survive a veteran's death, I believe that the conclusion reached by the majority is foreclosed to us.

Accordingly, I respectfully dissent.